By the Court. Woodruff, J.
This action is brought by the plaintiffs, to recover the possession of a strip of ground, situated upon the easterly side of Theatre alley, in this city, adjoining . the southerly or rear wall of the building known as the Clinton Hotel, which fronts upon Beekman street, at the corner of the said alley. Although a larger piece of ground was claimed, in the *274 plaintiffs’ complaint, it is now conceded, that the controversy, on the trial, was confined, simply, to a space about eleven inches in width, in Theatre alley, and running eastwardly twenty-eight feet, towards Nassau street, between the southerly wall of the hotel, which was built in 1831, and the northerly wall of a building, afterwards erected, in 1831 or 1832, by the trustees of the American Bible Society, grantors of the defendants.
In 1828, the executors of Mrs. Ann White, the former owner of all the ground between Nassau street and Theatre alley, extending from Beekman street southerly of the premises in question, conveyed to Philip Hone the westwardly one half of lot No. 5, upon a map of the property of the said Ann White, and to certain persons, trustees of the Clinton Hall Association, the eastwardly one half of the same lot. On the first of May, 1829, the same executors conveyed to the trustees of the Bible Society, lots Nos. 6 and 7, upon the same map.
It appears, by the map and deeds, that the lots Nos. 5 and 6 adjoined each other, and extended from Nassau street to Theatre alley, and that the line of division is a straight line from the street to the alley.
Soon after these conveyances, the respective purchasers erected buildings upon the premises. Mr. Hone, in 1831, built the Clinton Hotel, fronting Beekman street, and running down the line of Theatre alley, to a line, which is now the northerly boundary of the strip in dispute, not covering his whole lot, but leaving a yard in the interior space, easterly-of the building.
It is now claimed, by the plaintiffs, that the building did not, in fact, extend southerly to the line of the lot No. 6, as it might have done, but that Mr. Hone left the narrow strip, of eleven or twelve inches, along the end of the building communicating with the hotel-yard, for a drain, and that it was used as such drain by the occupants of the hotel, and, in some instances, as a passage from the hotel-yard into the alley; and was used or occupied in no other manner, and by no other persons, down to 1847 or 1848, when, in consequence of the construction of a sewer in Beekman street, its use as a drain became unnecessary, and it was then closed up, permanently, at the outer end, on Theatre alley, by a brick wall.
And the plaintiffs insist, that this drain was included in the deed *275 to Mr. Hone, from the fact of such use and occupation, and also from an alleged necessity to include that within his boundaries, in order to give him the number of feet which the deed, purports to convey to him, while, without this strip, the Bible Society have quite as many feet as the deed to the trustees purported to grant; and, especially, because, unless this strip is so included, the southerly line of lot Ho. 5, and northerly line of Ho. 6, instead of being a straight line, (as laid down on the map, by which the deeds were given,) after running westwardly, fromHassau street, about seventy feet, turns, at right angles, to the north, across this disputed strip of land, and then is continued to Theatre alley, making what is called a jog, on the northerly line of the defendants’ premises, and adding so much, at least, to the width of the lots, as described in the deeds to the Bible Society.
The testimony of the surveyor, Mr. Serrell, was, that Clinton Hall and the hotel were, architecturally, one building, and that the wall of' Clinton Hall was built along the whole of their southerly line, i. e., a little over fifty feet, of the seventy feet above mentioned. The hotel-privies were next adjoining, and they appear to have been built upon the same line, continued; and it is only necessary to add the drain in question, to the plaintiffs’ premises, to make the line, from the street to the alley, straight and continuous, as it is laid down upon the map, to which the deeds refer, and this, at the same time, leaves to the defendants the full quantity of land described in the deeds, under which they claim.
Upon a careful examination of the case, I am constrained to to say, that the evidence is convincing, that the strip of ground in question, is included in the deed to Mr. Hone, and is not embraced in the conveyance to the Bible Society, and that the jury must, upon the evidence, have so found. If, however, the case had been submitted to the jury upon the mere question whether the premises were embraced in the deed to Mr. Hone, and the verdict had been rendered against the plaintiff upon that point, it might have been difficult to say that the finding was so against the weight of evidence, that it should be disturbed.
But the case was not submitted to the jury upon that question alone.
There was evidence on the part of the defendants, that the building erected by the Bible Society for a book-bindery, on *276 Theatre alley, was built in 1831, after the erection of the hotel; that although the northerly wall of that building above the surface of the ground did not cover the premises in question, yet its foundation wall extended underground the whole width of the disputed strip to the foundation of thB hotel wall; and that its easterly wall was also extended across the inner or easterly end of the disputed premises; and that its westerly wall, after being raised some seven feet from the ground, was carried across over the outlet of this drain or passage-way to and against the wall.of the hotel, and was so carried up to the roof. And that it being thus partially enclosed on three sides, the roof of the bindery was extended over it to the wall of the hotel. Upon a part of these claims there is conflicting evidence, but there is testimony to the effect stated.
There was evidence wholly uncontradioted, that from the time of the erection of the buildings, this strip of ground in question, (called by the witnesses “an alley way,” or “drain,” or “passage way,”) remained as it then was until 1847; that it was always used exclusively by the occupants of Clinton hotel; that it was never used by the Bible Society, nor by any person except such occupants; that its use was as a drain from the hotel, and sometimes persons passed through from the hotel yard to Theatre alley; and that the opening to Theatre alley was provided with an iron gate, and afterwards with a wooden gate, which was maintained by the occupants of the hotel, until 1847 or 1848, when, as above stated, on the construction of the sewer in Beckman street, the opening to Theatre alley was bricked up by the occupants of the hotel.
In view of these and other circumstances testified to, in respect to which there was some conflict, the jury were instructed, that if they were satisfied that the deed to Mr. Hone embraced the premises in dispute, the plaintiffs were entitled to recover, unless they are shut off by an adverse possession or by estoppel, and that in either of these ways the plaintiffs may have lost it, and then the use of the alley gave only an easement to the plaintiffs. And again, if the land belonged to the plaintiffs by deed, the enclosure by the defendants was a sufficient adverse possession, and- “ if you find that the defendants laid the foundations, built the roof and the front wall, and so took possession more than twenty *277 years ago, then the plaintiffs, by their use, acquired an easement only.”
These instructions assume that the title was in the plaintiffs and not in the defendants, and that the defendants may acquire a title by adverse possession at the same time that the plaintiffs are acquiring a prescriptive title to an easement in their own land. This appears to me paradoxical, and inconsistent with the nature of an easement, as well as with the requisites to an adverse possession. An easement is a right, service, or privilege which a man hath in the lands of another, not in his own lands. The moment he acquires the title, his easement is extinguished. Title to an easement is founded in grant, or that prescription which presumes a grant; can the owner be presumed to grant to himself? And an adverse possession must, I apprehend, be exclusive of the owner.
Taking the facts to which this instruction relates most favorably to the defendants, the defendants’ grantors enclose the premises in part, by placing a foundation wall under the surface, erect a wall on three sides, leaving the premises open to the street, some six or seven feet on one of these sides, and extend a roof over the whole, while the remaining, or fourth side is accessible to the real owner, and the passage is in part used, and exclusively used by him, both as a passage and a drain, and the grantors of the defendants not only neither use nor occupy, but have excluded themselves therefrom. I am not able to perceive how the plaintiffs’ title can, by such a condition of things, be converted into an easement in another’s land; nor how the defendants, in such a case, can gain the title by adverse possession.
The adverse possession which constitutes a bar to a recovery, must be an actual and a hostile possession, not a mere trespass; it involves the assumption of a right to the land from the time such adverse possession is alleged, and a continued holding with the assertion of right, and it must be visible and notorious, and of such a character as excludes the exercise of the ownership by him in whom is the real title; and it must be hostile in a sense that indicates an intent to occupy exclusively.
See authorities collected in notes to Taylor v. Hurd, 2 Smith’s Lead. Cases, with Am. notes, p. 393-416; Clapp v. Bromagham, 9 Cow. 530; Jackson v. Hill, 5 Wend. 532; Id. v. Frost, 5 Cow. *278 346; La Frombois v. Jackson, 8 Cow. 539; Smith v. Bunting, 9 J. R. 174.
The Revised Statutes (2d vol. p. 294) plainly recognize these requisites, and make claim of title exclusive of any other right, essential to constitute such a possession as will bar the owner. I have looked in vain for any evidence that the Bible Society ever claimed title to the premises in question. The defendants’ witness, the general agent of the society, since 1836, testifies that the society never claimed any right in it, and no witness states the contrary. Another of the defendants’ witnesses, and, indeed, all who speak of its use, state that it was always used exclusively by the occupants of the hotel. It was cleaned by the latter, and the agents of the Bible Society not only did not exercise this act of ownership over it, but complained to the occupants of the hotel, if this was not done by them.
Under such circumstances, I am of opinion that the partial enclosure by the defendants, did not constitute an adverse possession as against the owners of the hotel property, and that the jury should have been so instructed. It is true, that among other things, the jury were told, that if the premises were an open passage connected with the hotel, and used exclusively by them, then the defendants have no claim of adverse possession; but they were also told, that “ if there was a foundation under, and a roof over it, and the front enclosed, as the defendants say, as far back as the erection of the Bible House,” that was a sufficient adverse possession. In the absence of any other occupation, such an enclosure would undoubtedly constitute a sufficient possession, but to make even this adverse, it must have been taken under claim of' title and have been exclusive of the owner, and cannot be adverse while the sole and exclusive occupant of the ground thus partially enclosed by the defendants, is the owner himself.
The other mode in which the jury were instructed the plaintiffs may have lost their title is by estoppel, and in explanation of that subject they were told, that if the defendant acted in good faith in erecting his new building, and if the plaintiffs stood by and allowed him to do it, without notice of their claim, they are not allowed to maintain it now. I am not 'satisfied that this instruction is correct. It is true that in The King v. The Inhabitants of Butterton, (6 T. R. 554,) Laurence, Justice, makes this *279 observation:—“I remember a case, some years ago, in which Lord Mansfield would not suffer a man to recover, even in ejectment, where he had stood by and seen the defendant build on his land.” But I have sought in vain for any other case in England or in this state, in which it has been held that mere silence, when one was erecting a wall upon another’s land; estopped the owner to claim the title. It is not only construing silence into a license which would excuse the trespass, but is creating a new kind of assurance, resting wholly in parol, by which real estate is to be divested, and, in effect, conveyed to the occupant.
While the law requires conveyances to be by deed, under seal, or under the solemn form of records, there are estoppels by deed and estoppels by record, which conclude a party from claiming title. But in the face of the statute of frauds, which requires writing, to create or vest any interest in lands, we should be very slow to give to an estoppel in pais, (the evidence of which is to rest in mere parol, and to depend upon what the owner said, or even whether he said any thing,) to operate to defeat his otherwise established legal title. For be it observed in this case, that the jury were told that if they were satisfied that the plaintiffs’ deed called for. this strip of land, the plaintiffs may, nevertheless, have lost it by the estoppel described.
It is doubtless true that, in determining a question of boundary, where the proofs of location, the position of monuments, and other like evidences rest in parol, the admissions of a party are competent evidence; and sometimes, when relied upon by the other party, are, for certain purposes, conclusive; estoppels in pais are admissions, and nothing else.
In the cases of The Trustees v. Williams, (9 Wend. 147,) and Dezell v. Odell, (3 Hill, 215,) in which the nature and effect of an estoppel in pais are discussed, the admissions held to estop the party were in relation to matters the proof whereof lay in parol. And so also are the cases in England, Hearn v. Rogers, (9 Barn. & Cres. 577;) Pukard v. Gears, (6 Ad. & Ellis, 469;) and Davis v. Wilkinson, (10, 96, 98.) While, on the other hand, in the Welland Canal Company v. Hathaway, (8 Wend. 480,) the admissions contained in the defendant’s written contract were held ineffectual to estop him to deny the fact of the plaintiffs’ incorporation, or even to ’ dispense with proof, and it was also held, that evidence resting *280 in records could not be supplied by proof of the admissions of the party. In Whitney v. Holmes, (15 Mass. 152,) there was a written agreement by which certain persons were authorized to survey and fix a division line, and the survey and location, in pursuance of that agreement, were held by the court insufficient to operate as a transfer of the title. The court say, no man is barred of his right by way of estoppel but by record or deed. It may operate as a Ecense and protect the defendant for an act which would otherwise be a trespass, for such a license may be by parol. In Gerrish v. The Proprietors of Union Wharf (26 Maine, 13 Shep. 384,) an agreement in writing, not under seal, was held insufficient to estop a party, and the court say, “ One cannot be barred by an estoppel of his right to an estate but by deed or record.”
Lord Coke jn commenting upon Littleton, (§ 667,) wherein it is observed that “ a man shall be estopped by matter in fact, though there be no writing by deed indented or otherwise,” says, “ there be three kinds of estoppels, viz., by matter of record, by matter in writing, as by deed indented, acquittance by deed, or defeas'ance by deed, and by matter in pais, as by livery, by entry, by acceptance of rent, by partition, and by acceptance of an estate.”
And in Brown v. Wheeler, (17 Connect. 345,) Chief Justice Williams held, that an agreement in writing that partition should be made by three persons designated, an actual division by such persons, and occupation by the parties for eighteen years conform-ably to such partition, were sufficient, within the rule stated by Lord Coke, to estop each of the parties.
In Doe v. Rosser, (3 East. 15,) a submission, under bonds to an arbitrator, and an award in pursuance thereof, concluded the claimant. In Sheperd v. Ryers, (15 J. R. 496,) in an action of assumpsit, in relation to the effect of a covenant for a division of land owned jointly, which division should be made by persons therein mentioned, coupled with an award making partition, Thompson, Chief Justice, says, “The partition made by the persons appointed for that purpose, might be considered in the nature of an award of arbitrators, which, though it might not have the operation of conveying the land, might estop the defendant from setting up his title.” And the case of Emans v. Turnbull, et al., (2 J. R. 314,) holds an agreement entered into one hundred and thirty-six years before the time of the trial, for the settlement of *281 a controversy in regard to the title, declaring that the lands specified respectively, should be owned and held by each as therein mentioned, with an occupation in conformity to such agreement, for a period as remote as the memory of witnesses could reach, shall be deemed conclusive, “ though deficient in apt terms to pass a fee, the agreement ought to bind, especially after such a lapse of time accompanied by so long an acquiescence.” There is certainly no warrant in either of these cases for the proposition that the owner of the fee, by standing by and seeing his neighbors build on his land, loses his title.
It is true that, in Sayles v. Smith, (12 Wend. 57,) upon proof, among other things, that the assignor of the defendant, in ejectment, had admitted by parol, that the premises belonged to one Bradley, from whom he had agreed to purchase the same, at the time Bradley took his deed from the former owner, the court say that the defendant is, as one holding under Bradley, estopped to set up a title acquired long prior to Bradley’s purchase. But in relation to this case several observations are pertinent. What was said in regard to the estoppel was wholly unnecessary, and the case did not require any decision on the point. Nor, indeed, was it decided at all on that ground, the defendant’s title being held divested, and, in truth, vested in the plaintiff, upon other grounds. Again, it is not very clear by the report of the case, what was held to amount to an estoppel, viz., the parol admission that the premises belonged to Bradley, or the agreement which, by parol, he admitted that he made with Bradley. If the former, then there was no propriety in calling it an estoppel, for it does not appear to have come to the ear of, or to have been acted upon by any body interested in the matter; if the latter, then it does not appear that the agreement to purchase was in writing; and to hold a parol admission of a parol agreement an estoppel sufficient to bar a man’s legal title, is to give effect to a parol agreement as an estoppel barring a legal claim to land, when, by the statute of frauds, no title nor interest in land can be created by parol. And even if this case be taken as well decided, on the ground that there was an agreement which operated as an inducement to Bradley to take his deed and pay the consideration, upon which assumption alone is there any color for calling this a case of estoppel, it is obvious that such an agreement *282 presents a very different question from the present; it is upon consideration, and is mutual, and is in its nature sufficient, if valid for any purpose, to create an interest in the land itself. But however that can be viewed, so far as it can be taken to countenance the doctrine contended for in this case, the decision of the same court in Swick v. Sears, (1 Hill, 17,) warrants us in saying that it is not law. In the latter case, the defendant in ejectment offered to show that when he purchased the premises in question, the plaintiff not only stood by and saw him purchase, and pay his money therefor, but that the plaintiff advised the purchase and the'giving the deed to the defendant, and declared that it would pass the premises and make the defendant’s title perfect, and yet the court rejected the evidence on the trial, and the ruling was sustained in the Supreme Court, who held the plaintiff not estopped, in a court of law, to assert his own title, notwithstanding these acts and clear admissions, so unequivocally made with a view to influence the defendant’s conduct, and relied upon and acted upon by him. That case is far stronger, and much more fully meets the requisites of an estoppel in pais, than the mere silence while a wall was constructed in the present case; and if the former does not bar the claim of title in a court of law, surely the latter will not.
See also, on this subject, the case of Miller v. The Auburn and Syracuse R. R. Co., (6 Hill, 61.)
The rule contended for suggests several inquiries, which, I think, show that it cannot be sustained. If standing by and allowing another to erect a building on one’s land, bars the owner’s claim, what estate is thereby acquired by the builder ? a fee, or a term to cease with the decay or destruction of the building ? What kind of a building is it, the erection of which produces this effect? a brick or stone building only, or one of wood also ? Is the rule confined to what is-in common parlance a building, or will it apply to any erection? and if so, of what height, or depth, of what materials, and of how permanent a construction ? Will it apply to a board fence, or a line of stakes driven into the ground ?
The proposal of these inquiries seems to me to suggest what there is of real foundation for this supposed rule, viz., where the acts or declarations of the owner have been such as to mislead an *283 innocent party, who, in a reliance thereon, known to or induced intentionally by such owner, has expended his money in such wise, that to suffer the owner to falsify his own acts or declarations by asserting a title inconsistent therewith, would be to permit a fraud, a court of equity will restrain the latter just so far as is necessary to prevent the fraud and protect the innocent and otherwise defrauded party. (7 Barb. 409, 8 Barb. 102.)
This is, I apprehend, the only foundation for the supposed rule contended for. The court of equity interferes, not upon the ground that the legal title “ is lost,” as suggested in the present case, but that it is inequitable to permit the party to assert it; and such is the language of the equity cases upon the subject. (Wendell v. Van Rensselaer, 1 John. Ch. R. 34.) “If one man knowingly, though passively, by looking on,.suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person; it would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.” See numerous cases in equity, cited by Chancellor Kent, to the same effect; and see, also, Town v. Needham, (3 Paige, 546.) In Storrs v. Barker, (6 John. Ch. R. 166,) the same rule is established in equity, and the suggestion of Lord Mansfield, of the existence of any such rule in a court of law, is questioned. And this view of the rule is conformable to the decision in Swick v. Sears, above referred to, in which Mr. Justice Bronson, in giving the opinion of the court upon the effect of the alleged estoppel, says, “ If the defendant finds it necessary to rely upon this part of his case, he must go to a court of equity.”
The propriety and reasonableness of a resort to a court of equity appears, also, in this, that that court can adapt its restraint to the nature of the act, and to the extent of the danger of fraud, and in that, will regard the nature of the acts, done in reliance upon the admissions complained of. In case of a purchase, they may secure to the purchaser the fu.ll benefit of his purchase; (Niven v. Belknap, 2 J. R. 573-4; Hall v. Fisher, 9 Barb. S. C. R. 31; and Dennison v. Ely, 1 Barb. S. C. R. 610;) where a party has entered under a parol agreement for a purchase, and made improvements, equity may enforce the agreement, upon the principles of a part performance. (Parkhurst v. Van Cortlandt, 14 J. R. 15.) *284 If a building be erected, they may protect the building, so long as it shall stand. If a wall be built, they may allow it to be preserved in its position, or compel the claimant to pay the expenses of its removal. But in neither of these last two cases, is it necessary, to prevent fraud, that the fee should be deemed to be lost to the owner of the land, merely because he has acquiesced in an erection of either a wall or building thereon. In such case a court of law may, perhaps, go so far as to say, that if the owner stands by, and suffers a wall or building to be so erected, he shall not afterwards maintain trespass therefor, but his acquiesence shall be deemed a license; but I am decidedly of opinion, that the court cannot say that his legal title is lost thereby. (7 Barb. 409; 8 id. 102.) If we were now disposing of the question in this case, as a court of equity, talcing into view the evidence, that by the qualifications designedly inserted in the deed to the defendant, plainly intimating a doubt of the title of the Bible Society to the land in question, the situation of the strip of land itself, from the use and enjoyment of which the society was excluded by the walls then standing thereon, and especially the evidence that the defendant’s agents were informed that the strip belonged to the hotel, we should hardly be able to say, that, by the very slight evidence affecting the plaintiffs, any estoppel, in equity, arose to the prejudice of their title. It is, at least, doubtful whether we should be warranted in saying, that the plaintiffs knew, or had reason to know, that the defendant intended to build on the eleven inches in controversy. To justify the interference of a court of equity, it ought very clearly to appear, not only that the defendant acted in good faith, and without notice, in an innocent mistake, but, also, that the owner knew that he was building upon the very ground in question. (10 Barb. 511; 28 Maine, 525, and cases above cited from this state.)
Without pursuing this inquiry, it must suffice to say, that the interposition of this court, as a court of equity, was in no wise invoked by the defendant. Doubtless, under our present system of pleading, it would be competent for a defendant to set up, by answer, his equitable claims, and if the facts proved were such as clearly to call for an injunction, they would avail to prevent a judgment inconsistent with such equity, and they might, perhaps, avail for this purpose, as a defence, even though that answer con *285 tained no prayer for injunction, or other affirmative relief. But the defendant has here presented no such equitable claim. His defence is based solely upon legal grounds, and this supposed estoppel will not, at law, avail him.
Upon this ground, .also, then, a new trial must be granted.
The costs must abide the event.