Robertson, Ch. J. The deed executed by the defendant to the plaintiff complied, in all respects, with the written agreement between the parties ; and unless that agreement was also the result of a mistake, which'is not pretended, the defendant has not a shadow of defense on that score. The evidence is overwhelming that the written agreement was the only one made, and that all other transactions in reference to a settlement were mere negotiations and conversations, which were all merged in it. There is not a particle of evidence that the mistake, if any occurred, was mutual; that the plaintiff did not intend to procure and expect to receive a conveyance of the whole strip. The very map or diagram by which the defendant directed the deed to be drawn, contains a statement of the encroachment on the rear as well as the front. The report upon that point is clearly erroneous.
The deed executed by the defendant to the plaintiff complied, in all respects, with the written agreement between the parties ; and unless that agreement was also the result of a mistake, which'is not pretended, the defendant has not a shadow of defense on that score. The evidence is overwhelming that the written agreement was the only one made, and that all other transactions in reference to a settlement were mere negotiations and conversations, which were all merged in it. There is not a particle of evidence that the mistake, if any occurred, was mutual; that the plaintiff did not intend to procure and expect to receive a conveyance of the whole strip. The very map or diagram by which the defendant directed the deed to be drawn, contains a statement of the encroachment on the rear as well as the front. The report upon that point is clearly erroneous.
The conclusion of the referee that the facts estop the plaintiff from recovering the strip of land between his house and his stable requires more examination. The answer only sets up that the defendant took possession of such strip with “the knowledge, privity and consent” of the plaintiff; not that the latter did any acts to induce the defendant to take such possession or expend any money in improving it. Strictly, *224 therefore, it set up neither an equitable estoppel nor any'facts to-support it.' The - defense so pleaded seems to be rather a license to occupy, than an estoppel; and the evidence which was .admitted without objection, would have been admissible to prove such license ; the plaintiff therefore was not- precluded from availing himself - of the omission in the answer to set up an estoppel, as an objection to admitting it as a defense. .
An estoppel in equity or by matter in pais appears not to rest on the same footing, or to be as clearly defined in its nature and extent as one at law. It must be conceded however, that the act, representation or omission to act or make a disclosure, which is to create the estoppel, must be both adapted and intended to induce the -party claiming it, to adopt a course of conduct prejudicial to - himself; unless such- estoppel -should be raised; and that he must have adopted such course by reason of such act, representation - or omission.- (Dezell v. Odell, 3 Hill, 215. Plumb v. Cattaraugus Co. Mut. Ins. Co., 18 N. Y. Rep. 392. Lawrence v. Brown, 5 id. 394. Chautauque Co. Bank v. White, 6 id. 236. Jewett v. Miller, 10 id. 402. Carpenter v. Stilwell, 11 id. 61. Farrell v. Higley, Hill & D. Sup. 87.) It is' not, however, easy in all cases, to determine the extent to which such estoppel shall be carried ; nor are the boundary lines between it and a contract between-the parties, or a liability to indemnify to the- extent of his injury, the-party injured by the fraud, which' is the- sole" basis of the estoppel, clearly defined. Where that injury consists of a mere 'disbursement of - money, whose amount is liquidated and easily ascertained,- as matter of equity, the obligation of the party causing such -injury should only extend to indemnifying the party injured, by restoring the amount disbursed; and ought not-to include his making good- every thing which the party injured might have a right to infer from his acts, representations, silence or inaction, which produced1 the' injury complained of. No estoppel would be necessary in such -case to do complete justice between the parties. So, too, false-rep-' resentations made to the party injured, with intent to deceive him, and adapted to that end and actually deceiving him, so *225 as to induce him either to act or abstain from acting on the faith thereof, furnish the basis for an action for fraud, and recovery of damages commensurate with the injury. Equity, however, may in case of such representations imply a contract by the party making them to make them good, (Montefiori v. Montefiori, 1 W. Blk. 364, per Ld. Mansfield,) and enforce it specifically by way of estoppel, in the same cases in which it would contracts in relation to real estate or those in regard to personal property where an adequate remedy could not be afforded by pecuniary compensation ; in other words, where it would decree a specific performance. In the case of a naked omission to act or disclose facts within the knowledge of one of the parties, no fraud could be inferred or presumed therefrom, unless the parties stood in some relation to each other which required the performance of such acts or making of such disclosure ; nor could á contract be implied from mere silence and inaction. The only theory of redress as well as mode of administering it in such case would be the creation, against the party who was silent' and inactive, of an estoppel as to such facts as were so clearly inferrible and by the party prejudiced, actually inferred from such silence or inaction, as to induce the performance of the acts done by him to his own prejudice in consequence of such inferribility and on the faith of such inference ; but although more might be inferred from such silence and inaction than was necessary to induce such acts, the estoppel should be limited to only the admission thereby of just enough for that purpose. (Miller v. Platt, 5 Duer, 272.)
It is upon these principles that a person holding a conveyance of land, who conceals the fact and permits another, having color of title to. or claiming it, to sell and convey it to an innocent third party, is thereby estopped from setting up such conveyance against such purchaser. (Wendell v. Van Rensselaer, 1 John. Ch. 344. Storrs v. Barker, 6 id. 166. Tilton v. Nelson, 27 Barb. 595.) But in such cases something more is necessary than mere knowledge of the fact that the pretended owner is about to sell the land to another *226 person, and an omission to notify the latter of the claim of the real owner. The latter should be exhibited to and recognized by such intended purchaser, as being in a position where good faith and candor requires that he should disclose his title to the latter, unless he intended to relinquish it and ratify the sale by the pretended owner ; in other words, must have misled the purchaser. (Carpenter v. Stilwell, ubi supra.) There are some cases apparently to the contrary, but in all of them it will be found that some positive act was done by the party estopped, tending to create a belief in the nonexistence or relinquishment of his claim. In Storrs v. Barker, (ubi sup.) such party estopped had encouraged the other parties to deal together. In Lawrence v. Brown, (ubi sup.) stress was laid on the fact that the dowress of the decedent had not induced the belief that purchasers of his real estate at a sale by order of a surrogate, would acquire a title divested of her dower. In Dougrey v. Topping, (4 Faige, 94,) the dowress was administratrix also ; one of the terms of sale of which she was cognizant was, that “ a clear and satisfacfactory title should be given she or her agent was present at the sale, and she joined in the report of it. In Lowrey v. Teto, (3 Barb. Ch. 407,) the party who was estopped . had a right of redemption of mortgaged premises, but attended their sale on foreclosure, and received part of the purchase money as a judgment creditor of the mortgagor; and a mortgagee who is a judgment creditor, also, is bound to elect in which capacity he claims. (Butler v. Miller, 1 N. Y. Bep. 496.) The mere presence at a sale of chattels or personal property, of a claimant thereof, without interposing his claim, has been held in some cases to estop him from afterwards setting up such claim. (Outwater v. Dodge, 6 Wend. 397. Thompson v. Blanchard, 4 N. Y. Bep. 303. Bider v. Union India Bubber Co., 4 Bosw. 169.) But this has been limited to equitable claims, (Otis v. Sill, 8 Barb. 102,) and is only cognizable in equity, even while the claimant had urged the purchasers to buy. (Sioick v. Sears, 1 Hill, 17.)
In the present case, the only acts done by the defendant *227 which he claims to have been the result of the plaintiff’s conduct, were, the building of the wall of the rear of his house, over twenty-one feet in length, on the plaintiff’s ground, and erecting the fence from it to the stable of the latter. The acts of the plaintiff which are claimed to have induced the defendant to commit such acts on his part, consisted solely of his taking a saw from a workman employed by the latter, after the foundation had risen to his piazza, and sawing out part of such piazza; marking a line on his house; drawing a line from thence to such stable ; and saying to the defendant, “ I believe that’s rightand that “ he would have to cut off the steps on the back stoop, so that the line could be drawn straight to the marks” the defendant’s surveyor made on the stable, from “ such marks made by the plaintiff.” His acquiescence consisted merely in not resisting, or even remonstrating against the defendants’ encroachment.
It was held by this court, at general term, in Miller v. Platt, (5 Duer, 272,) after a full review of the authorities, that standing by and suffering another to erect a building or wall on land, is not sufficient to pass the title ; and that the owner of such land is not estopped, by suffering the erection in silence, from setting up his title; and one of the difficulties suggested in the case was that a title was not necessary to make the erection of the wall' lawful. A mere license, or tenancy at will, or at most during the existence of such wall, was all that was necessary. In this case the defendant had already completed his occupation of the plaintiff’s land, by building the foundation of his wall thereon, as high as he could without cutting down the plaintiff’s piazza. His workman was on the point of doing that when the plaintiff for some purpose proposed to do it, and did it himself. Nothing seems to have been said as to the purpose for which he made the marks on his house and drew the line therefrom to the stable. His remark as to such line being right, does not refer to any standard, and is therefore not easily understood, or readily interpreted. The defendant and Ms workmen were evidently engaged in going on with the work, and without *228 physical resistance would probably not have desisted. All, therefore, that the plaintiff did or said actively, did not add any strength to his acquiescence, without a remonstrance, which was not sufficient to create an estoppel.
But the main difficulty in the way of an estoppel in this case is, that the defendant already knew the plaintiff’s title, since he derived it from himself. The plaintiff had a right, legally, to presume that the defendant knew what was in a deed executed by himself; and whether he was careless enough to execute it without reading it, or not, the former was not bound, without due notice of it, to know that he had done so. He had a right, therefore, to consider the defendant as proceeding at his peril, with his eyes open; and the latter said and did nothing to undeceive him.
I think, therefore, upon either ground the referee’s report is erroneous, and that the judgment should be reversed, and a new trial had, with costs to abide the event; the order of reference to be discharged.
Garvin, J. concurred.
McCunn, J. The dispute in this case arises from the overlapping of a wall on an adjoining lot in Thirty-second street in this city. The plaintiff and defendant bought at different times two lots adjoining each other. On the plaintiff’s lot there was a house. After the purchase it was ascertainód that the house encroached on the defendant’s lot inches in front and 4J- in rear. The plaintiff brought ejectment, and when the cause was about to be tried, an arrangement was entered into whereby the suit was' discontinued, and the number of inches on which the house encroached was conveyed to the plaintiff for the consideration of $316. The conveyance, however, not only carried with it the land on which the encroachment was, but also covered the strip back to and ending in a point in the rear of the lot. Afterwards the defendant built on his lot, and instead of adhering to his agreement, he extended his house and fence over the vacant ground he had recently conveyed to
The dispute in this case arises from the overlapping of a wall on an adjoining lot in Thirty-second street in this city. The plaintiff and defendant bought at different times two lots adjoining each other. On the plaintiff’s lot there was a house. After the purchase it was ascertainód that the house encroached on the defendant’s lot inches in front and 4J- in rear. The plaintiff brought ejectment, and when the cause was about to be tried, an arrangement was entered into whereby the suit was' discontinued, and the number of inches on which the house encroached was conveyed to the plaintiff for the consideration of $316. The conveyance, however, not only carried with it the land on which the encroachment was, but also covered the strip back to and ending in a point in the rear of the lot. Afterwards the defendant built on his lot, and instead of adhering to his agreement, he extended his house and fence over the vacant ground he had recently conveyed to *229 the plaintiff, and for the recovery of which this action is brought.
It is claimed by the defendant that the conveyance of the strip of ground the entire length of the lot was a mutual mistake, and that the defendant only intended to convey the number of inches which the house overlapped; also that the plaintiff was estopped from claiming his land because he did not protest when the defendant was building his house.
After a careful examination of the case, I am satisfied that neither of these grounds can be maintained. It would certainly not be very complimentary to the legal gentlemen engaged on both sides in the first litigation to believe that when a matter was in dispute, and an amicable settlement had taken place, both the counsel could have been mistaken, for they both testify that it was intended that the entire strip should pass. Besides, there are no less than two agreements in writing to that effect; the agreement to sell and the deed conveying, and in addition we have the positive testimony of the plaintiff declaring that the whole strip was intended to be conveyed. Against this strong array of testimony I can only find the evi-i dence of the defendant as to what he believed and intended to convey.
I am at a loss to conceive what theories in regard to the application of evidence could have taken possession of the referee’s mind when he found that a mistake had been made in the conveyance; for his findings in this respect are clearly against the preponderance of proof.
The remaining question to be considered is, how far the acts or admissions of the plaintiff, made when the wall was being built, will estop him from a recovery in this action.
The leading principle of estoppel is the mutuality of minds. There must be consent, or there must be entire ignorance on one side, and concealment of the facts by the other, from interested motives. If a party owning land knowingly suffers another to purchase the same, and the purchaser improves the property without the owner making knovm his claim, the law is, that he shall be barred in equity from claiming the property, *230 without compensation for the improvements. This is the rule laid down in the case of Town v. Needham, (3 Paige, 564,) and in 7 Barb. 409, and 8 id. 102. But this principle can only he applied where the acts or admissions of the owner have been such as to mislead and injure an innocent party. In this case, 'however, the defendant positively knew he had parted with his title ; consequently he had no right to build on the premises. I hold that, where the party encroaching knows what he is doing, it is unnecessary for the plaintiff to protest, or to inform the defendant of the wrong he is perpetrating. This is established in Miller v. Platt, (5 Duer, 273,) and Swick v. Sears, (1 Hill, 17.) The encroachment in this instance was perfected before the plaintiff knew any thing of it; for I find from the evidence, that the wall was four or five feet high before the plaintiff knew what the defendant was doing on the premises, and consequently the plaintiff’s right of action had accrued ; and it is well settled that where a cause of action accrues, it can only be released for a valuable consideration.
The case of Baylis v. Usher, (4 Moore & Payne, 790,) is a leading case in establishing this doctrine. That case was an action of trespass for a wrongful distress of goods for rent. The property had never been removed, and the plaintiff had the free use of the same, and it was absolutely restored to him before suit was brought. Yet the action was held to lie. The court there clearly defined the rule to be, that where a right of action once vested, it could only be destroyed by release, or by the receipt of something in satisfaction, and such was the language of Justice Paige, in the case of McKnight v. Dunlop, (1 Seld. 537,) and of Judge Cowen in the case of Bowman v. Teall, (23 Wend. 309;) and in the case of Willoughby v. Backhouse, (4 Dowl. & Ryl. 539,) Bayley, J. said that there was no such thing as a man’s waiving his right of action when once a wrong had been committed. Indeed, the principle of law to that effect is so clear that it is useless to cite cases in support of the proposition.
The case of Miller v. Platt, (5 Duer, 273,) in this court, is *231 an analogous case to the one under consideration, and the conclusions of law there settle the question involved here. In that case it was held that the mere standing by and suffering another to erect a building, is not effectual to give title. Also, The King v. The Inhabitants of Butterton, (6 T. R. 554;) Swick v. Sears, (1 Hill, 17.) In the case of The King v. The Inhabitants of Butterton, Justice Lawrence held that such silence could only excuse a trespass, but that it could not pass a title. Indeed, in the case of Whitney v. Holmes, (15 Mass. R. 152,) the court went so far as to say that a party cannot be barred of lands except by record or deed ; and in the case of Gerrish v. The Union Wharf, (26 Maine Rep. 13,) it was held that a written instrument, not under seal, could not estop a party from claiming his land. It might excuse trespass, but could not affect title. In the case of Bioick v. Bears, where a party purchased premises and the plaintiff stood by and saw him purchase and pay his money, and also advised him to purchase, and declare that a deed would pass the premises and make the defendant’s title perfect, it was held that in a court of law, the party so advising was not estopped from claiming the lands.
The principle could be further illustrated by citing numerous other American and English authorities, but I have satisfied myself by simply referring to the above cases.
When the defendant in this action built his wall, the evidence is clear that he knew perfectly well how .far his line extended, and that when he so built. Although the plaintiff may have passively acquiesced in the course he was pursuing, yet he was building at his peril. Such acquiescence on the part of the plaintiff does not, in my opinion, release the defendant from responsibility in this action.
The judgment should be reversed and a new trial ordered, with costs.
Judgment reversed.