Per Curiam.
The learned justice, who tried this case, wrote a very able, clear and exhaustive opinion.
We think it unnecessary to add anything to what he said; and we, therefore, affirm the judgment on his opinion, with costs.
Tappajst, J.
—The defendant is a railroad corporation organized under the laws of this state and is the lessee of the railroad and franchise of the Rensselaer & Saratoga Railroad Company, and the Saratoga & Schenectady Railroad Company, and is in the use and occupation of such railroad.
The track of the last named railroad crosses a public street in the village of Saratoga Springs, known as Washington street, nearly at right angles, said street running easterly and westerly and said railroad track northerly and southerly.
The plaintiff is the owner of a lot of land with the buildings thereon situated on the northerly side of the said Washington street and westerly side of said railroad.
Upon said lot on the northerly side of said street there are six brick dwelling-houses and on the easterly portion of said lot adjoining said railroad track is a wooden block containing six dwelling-houses, the southerly tenement in said block being also upon the northerly side of said street; also a wooden building occupied as a store and dwelling-house, said last named block and building being two stories high.
In the summer of 1880 the defendant erected two picket fences, one near the easterly and the other near the westerly side of its said lands occupied by it for railroad purposes; said fences are 6 feet 2 inches high, built of posts set in the ground 6 inches square, set on the westerly side of the westerly fence and on the easterly side of the easterly fence 6 feet apart, to which rails 2 by 4 inches are attached horizontally 4 feet apart; upon these rails pickets 2 inches wide and seven-eighths of an inch thick are nailed perpendicularly 2 inches apart; at the' bottom of the pickets is a base board placed horizontally nailed to the posts. Vaughn’s diagram given in evidence at the trial is a correct representation of such fences.
The said fence built by defendant on the westerly side of its tracks from the north side of Washington street northerly towards Division street, commences at the north-east corner of the northerly gate-post at the distance of 61} feet easterly of the westerly line of its said strip of land 60 feet wide between said streets, and runs thence northerly in a straight line 299 feet 9 inches to a point opposite the northeasterly corner of the said Barber lot which is 6 feet 2% inches east of defendant’s westerly line; a tight board fence runs thence westerly 6 feet 2£ inches to the northeasterly corner of said Barber lot; thence northerly on the westerly line of defendant’s said strip of land said picket fence runs to the defendant’s gate-post on the southerly side of Division street where the southerly line of that street intersects the westerly line of defendant’s said strip of land.
The said fence built by defendant on the easterly side of its tracks commences at the northerly post of its easterly gate across *652 Washington street and extends thence easterly along the northerly line of said street 9 feet and 9£ inches; thence northerly, parallel with the westerly line of the United States hotel property and & feet 8 inches distant and westerly therefrom, to the defendant’s gatepost standing in the south line of Division street.
In 'the summer of 1880, defendant erected two gates across. Washington street, one easterly and the other westerly of its tracks; said gates were structures of timber, lumber, and iron rods, about 24 feet in height and occupying the whole width of the street; each gate supported by four posts of timber about 20 feet high, the northerly of said posts is 12 inches wide east and west and 19 inches wide north and south; the southerly of said posts are of the same dimensions; the end posts were placed outside the line of Washington street on defendant’s said land; between the inside gate-posts the space in said street is 26 feet 5-¡- inches, and the space for the sidewalk between the outside and inside posts is 12 feet; the gates across the sidewalk are about 4£ feet high with two bars across; one above and one below with pickets running from one to the other; such pickets are about 1¿ inches in diameter and 6£ inches apart, the gates across the highway between the sidewalks are made with a top and bottom rail with upright pieces 4 to 5 feet apart with an iron rod one-half inch in diameter running across diagonally. There is a superstructure of timber, iron plates and iron rods holding the sections together and making them one structure over the walks and carriage-way; at the top is arranged a covering for machinery to be used in raising the gates; when the gates are down the opening from the top of the same to such superstructure above is 13 feet and 3 inches.
The gates are raised at will by the use of machinery, and when raised to their usual height go into an opening above the said space of 13 feet and 3 inches and below the covering.
The gates are balanced by weights supported upon pulleys at the top of the structure; all the gates in the structure and at the same crossing in the two structures are opened and closed together by one man who operates a crank communicating motion to the gates by wheels, gears and shafts; such gates are ordinarily opened or closed in about five seconds.
Yaughn’s and Cramer’s diagrams put in evidence upon the trial are fair representations of the structures and gates.
Defendant at the same time erected a similar frame and posts, gates and superstructure from the north to the south line of Division street embracing the easterly and westerly track of their road.
The northerly of said gate-posts on the westerly side of the defendant’s tracks in Washington street is at least 3 feet east of the westerly line of defendant’s strip of land between Washington and Division streets and 6 feet easterly of the south house on plaintiff’s, said lot.
All the gate-posts are inside of defendant’s line of railroad; the inside posts are within the line of Washington street; said last named northerly'post is 10 feet 4 inches from the corner of plaintiff’s nearest house; and stands 3 feet 6 inches northerly of the northerly line of Washington street.
*653 Plaintiff, in her complaint, alleges that this last mentioned gate prevents the free and uninterrupted passage of the public, the Elaintiff and her tenants along Washington street, and is a great indrance in the use of the street and sidewalk and obstructs a fair view of her said premises from the east side of defendant’s track in Washington street, and obstructs the light from her windows in the store and dwelling on the corner westerly of said structure, and has greatly lessened the rental value of said premises and buildings thereon; also, that the erection of the said fence westerly of defendant’s track prevents the free and uninterrupted access of the public, said plaintiff and her tenants, to and from her said premises, enjoyed for over twenty years, and has thereby greatly lessened the salable value thereof.
Also, that on the west side of defendant’s railroad track and the easterly line of her said premises, and intersecting Washington street on the northerly side thereof, a street or way for the free and uninterrupted passage of wagons, sleighs, other vehicles, horses, teams and pedestrians has been left opened, and used by the defendants and their grantors, the plaintiff and her grantors,, and the public, for the purpose of transit to and from Washington street, to and along the east side of her premises and other premises located northerly and to defendant’s depot and Division street, for a period of over twenty years, and that such gates and structures on Washington street and such fences have obstructed the use of said street or way to plaintiff’s great damage.
Plaintiff prays judgment directing the removal of the said structures on Washington street, and of the said fences, and also for damages suffered by her in the loss of rents and other use to the amount of $5,000, and for such other and further relief or judgments as seems just and equitable.
If the defendant has only built a fence upon its own land in which plaintiff had no right or title, and over which the plaintiff had no right to pass, although its motives were bad and plaintiff suffered injury from the act therein; no right to recover. Pickard v. Collins, 23 Barb., 445 ; Mahan v. Brown, 13 Wend., 261; Parker v. Foote, 19 id., 309; McKeon v. See, 4 Rob., 467; Phelps v. Nowlen, 72 N. Y., 39; Chenango Bridge Co. v. Paige, 83 id., 178, 188, 190; Wehle v. Conner, id., 232, 238; Kiff v. Youmans, 86 id., 324; Moak’s Underhill on Torts, 455; Gallagher v. Dodge, 48 Conn., 389, 391; Falloon v. Schilling, 29 Kan., 292; Dent v. Auction Mart Co., L. R., 2 Eq., 245; Swett v. Troy, 12 Abb., N. S., 100; Black River, etc., Co. v. Barnard, 9 Hun, 104.
A railroad company is not liable for consequential damages caused by acts authorized by the legislature and necessary to the exercise of its franchise, the consequence of which acts lessens the value of the property of others, provided it used due care and skill in the exercise of such authority and in the performance of such acts, i. e., unhealthiness and uncomfortableness proceeding from noise, smoke, etc., from an engine house adjacent to the dwelling house. Cogswell v. N. Y., etc., R. Co., 48 N. Y. Supr. Ct., 31.
And a railroad company is not liable for the manner in which *654 surface water is affected by its embankment. Wagner v. Long Island R. R. Co., 2 Hun, 633 ; Morrison v. Bucksport, etc., R. Co., 67 Me., 353.
The gates across Washington street are common, usual railway gates of the most approved and effective kind, reasonably and skillfully adapted to their purpose, and were opened, closed and used in a proper manner.
Such gates when constructed were, and ever since have been, necessary for the protection and safety of ’the public and for the proper conduct of the defendant’s railroad business at Saratoga Springs.
The trustees of the village of Saratoga Springs have the authority of commissioners of highways over the streets of that village; they have the right to determine what is an obstruction to said streets at the point where the said railroad authorized by statute crosses them.
It is a question between such authorities and the defendant whether the gates are proper and necessary to guard and protect the public. Hayes v. Michigan Central R. R. Co., 111 U. S., 228 ; Textor v. Baltimore, etc., R. Co., 59 Md., 63 ; 2 R. S. 7th ed., 1253-4, §§ 102, 103, 104.
As the gates are permitted by the public authorities, and are necessary for public protection and safety and to enable the defendant to carry on its lawful business in a proper manner, although from their nearness to plaintiff’s property they cause more interruption and injury to her than to others, and in some degree injure her property, she is not necessarily entitled to recover for the injury any more than for other injuries to the property near the said road referred to in the cases above cited arising from the carrying on of railroad business. Chenango Bridge Co. v. Paige, 83 N. Y., 178, 188, 190; Benson v. Chicago, etc., R. Co„ 78 Mo., 504; Beals v. Stewart, 6 Lans., 408, 410 ; 1 Rorer on Railroads, 403.
The fence was not an unusual or unskillfully constructed fence for the purpose for which it was intended, and is not a structure of which plaintiff can complain unless defendant is restrained by some covenant from constructing and maintaining it. Nowell v. Boston Academy, 130 Mass., 209 ; Laws of 1854, p. 611, § 8.
Hothing is submitted in the brief of the plaintiff’s counsel ■claiming that the gates or fences were not carefully constructed upon the proper plan; her contention is that defendant can rightfully maintain no gates or fences, but is obliged to keep its grounds easterly of her premises whereon their tracks are located open and not obstruct the street near her premises.
The strip of land sixty feet' being the land used for tracks has been used by the defendant and. the railroad companies of whose rights it is the successor in the conduct of their business and under their control; that they allowed the public to pass over such grounds, keeping out of the way of the cars, locomotives and business of the companies, is no evidence of dedication of-any right to the public, or that the public use was adverse to that of the companies, but rather that such use was by permission of the *655 railroad companies partly in furtherance of their own business in their interest and partly for the convenience of others under circumstances doing little or no injury to them.
Such use of itself never confers rights. Turra of the Harvest Manufacturing Co. v. Asa States, S. C. Dork, No. 2, 37, 8, and cases there cited.
The plaintiff in the brief submitted by her counsel has not made claim to recover upon any such grounds, but solely upon the breach of the covenant contained in certain deeds and durable leases hereinafter referred to.
On May 24, 1854, Samuel Freeman and James M. Marvin as executors and Harriet Marvin as executrix of Thomas J. Marvin, deceased, leased in perpetuity to the Saratoga & Schenectady Railroad company the lands described in the plaintiff’s complaint, together with all the ways, profits and advantages and hereditaments whatsoever to said premises belonging or which to and with the same now are or at any time heretofore have been held, used or occupied as a part or member thereof, reserving a yearly rent of $280 to be paid by the lessee to the lessor.
Soon after 1854, the said railroad company built a freight house upon this leased land, which" it continued to use as such freight house until the assignment of such lease as hereinafter mentioned, March 25, 1870. The particulars of such use are shown by the several findings made at the request of the parties, not necessary to be referred to here.
On June 13, 1860, the Saratoga & Schenectady Railroad Company leased all of its property in perpetuity to the Rensselaer & Saratoga Railroad Company.
On March- 25, 1870, said last named railroad company “in consideration of $2,000, to it in hand paid by Solomon Friedlander, granted, assigned and set over unto him such indenture of lease of the property therein described with its appurtances and all its right, title and estate of, in and to the same, to have and to hold the same with the appurtances thereof as therein described unto the said Solomon, his executors, administrators and assigns, for the residue of the term mentioned under the yearly rent, covenants and agreements therein reserved and contained, and under the further covenant and agreement, and this assignment is made only upon this express condition, that during the continuance of this lease there shall be no building erected on the property thereby ' demised to be used or which shall be used as a saw mill, planing mill, iron foundry, grist mill, tannery or brewery, but otherwise as fully and absolutely and in the same manner as the grantor hereof could be holden of the same under the said lease herein described and conveyed.”
All the rights of Solomon Friedlander in the. property described in the complaint were conveyed to plaintiff February 25, 1880.
The defendant is correct in its construction that the lease by Freeman and Marvin of plaintiff’s lot to the said railroad company above mentioned was a perpetual lease reserving a rent charge without reversion, and vested the fee in the company, with no estate in the lessors unless they should re-enter pursuant to the *656 provisions in that regard in the lease itself, on forfeiture of such lease and the estate thereby granted. Van Rensselaer v. Hays, 19 N. Y., 68 ; Van Rensselaer v. Dennison, 35 id., 393, 399.
A portion of plaintiff’s land is part of lot Mo. 53 of the Putnam lots.
On August 10, 1833, John Dusty held this lot under a durable lease of the character of the lease above referred to. He then conveyed a portion of that lot to the Saratoga & Schenectady railroad then and still used as land for the said road.
That deed provided “ this conveyance being made with the express condition that the said railroad company, their successors or assigns, are not to erect or build any buildings or other erections on the said portion of the lot hereby conveyed, so as to injure oridepreciate the value of the other jiortion of the said lot not included in this conveyance.”
By mesne conveyance Dusty’s title to the portion of the lot Mo. 53 retained by him came to Thomas J. Marvin and Samuel Freeman, by deed from John Clark, about October 1,1847, and before the 1st of March, 1849.
On December 10,1832, Lewis Benedict and Thomas J. Marvin conveyed to the Saratoga & Schenectady Railroad Company a strip of land sixty feet wide, commencing at the Putnam line and running northerly to Division street, and thence in a curve to Broadway near the Arlington house, to be used and occupied only for the Saratoga & Schenectady Railroad Company. The grantors reserve their right to lay out and use any public street or streets which they may deem proper, crossing said main and branch railroad or either of them, also with the condition that if any part of the premises conveyed should cease to be used and occupied by the said company for the purposes for which they were thereby conveyed, that then such indenture should be void, and the said premises revert and become the sole property of the grantors, their heirs and assigns.
By resolution of the board of directors of said last, named railroad company, passed August 16, 1836, it was resolved to change the then landing place for passengers from Division street, on the branch railroad, to the main railroad; and to accomplish this object a certain preliminary agreement was entered into between the said railroad company and Benedict and Marvin, dated October 13, 1836, and the final arrangement was completed by deed dated October 17, 1836, from said Benedict and Marvin to the railroad company, and agreement between said parties, dated the day last named.
After careful examination of these deeds and agreements, I conclude that the failure to use the strip of land from Division street to Broadway for said railroad purposes would have caused the whole premises conveyed by said deed of December 10,1832, to revert to Benedict and Marvin, and while the deed and agreement of October 17, 1836, waived the right of such forfeiture, still the covenants in these instruments are impressed upon the land as effectually as though said deed of December 10, 1832, had not been made.
*657 Also, that the only covenant that applies to the lands of Benedict and Marvin, between the Putnam line and Division street, is the following in the deed of October 17, 1836:
“ The portion of said strip of land lying south of the north side of Division street; to be used and occupied only by the said railroad company for the purpose of laying platforms, rails or tracks, and no buildings or erections to be placed upon the same.
“ And the said parties of the first part, their heirs and assigns, to have the privilege of passing and repassing upon and over the same without obstructing the passage of the cars upon said road.”
Also, “ they, the Saratoga & Schenectady Bailroad Company agree that piazzas on the east side of the new carriage house about to be erected by the Saratoga & Schenectady Bailroad Company, north of Division street, may extend ten feet in width up on the west side of said new street. In consideration of which the' said company are prohibited from laying' or having any track or rail within ten feet of the east line of the lands of the said parties of the first part, west of the strip heretofore conveyed to the said party of the second part to this indenture.”
The reference to this in the agreement from the said railroad company to Benedict and Marvin, of the same date of and referred to in said deed, is as follows : After referring to the two lots and the strip of land on the north side of Division street as having been conveyed to the said railroad company, it continues: “And also of a strip of land upon which this main railroad of the said company is now constructed, being sixty feet in width, to be used only for the purpose of laying rails or tracks upon the same.”
“ They (the said company) also covenant and agree that no rail or track shall be laid or had within ten feet of the east line of the lands of the said parties of the second part, west of the strip conveyed to the said parties of the first part by the annexed conveyance.”
This covenant did not apply to the Putnam lots, part of the plaintiff’s property, which were not purchased by Benedict and Marvin until between October 1, 1837, and March 1, 1849.
It could be operative only upon lot Ho. 1 of the Benedict and Marvin land described in the twenty-ninth finding made at plaintiff’s request, twelve feet of which was bounded on the east by the last mentioned strip of land conveyed by Benedict and Marvin to the said railroad company.
Did the lease from Freeman and Marvin to the said railroad company, dated May 24, 1854, convey the benefit of the covenant contained in the deed from Benedict and Marvin to the said railroad company, dated October 17, 1836, and the benefit of the covenant in the deed from John Dusty to the said railroad company, dated August 10, 1833 ?
It did not in terms, and I think that it did not in fact.
The lessee in such lease was the party whose land, then held and used by it, was bound by these covenants; when made it needed no such covenants for the benefit of the lands to be *658 granted and demised. It was to give the lease land for a purpose inconsistent with="the restriction to lay no track within ten feet of its west bounds. As soon as such land vested in it under the proposed lease any easement for its benefit over their adjoining railroad lands, and any covenant restricting the use of such land, inconsistent with the use contemplated by the lease, was extinguished.
The lessee acquired nothing and nothing was granted to it by the lease except the ordinary rights of a lessee of the entire lot as a whole. Stevens v. Dennett, 51 N. H., 329. The easements were merged and extinguished' by unity of estate and posses- . sion of both pieces of land in the sam.e parties, the said railroad company. Whalley v. Tompson, 1 Bos. & Pull., 371; Parsons v. Johnson, 68 N. Y., 65-6; Pierce v. Selleck, 18 Con., 321.
Whether Solomon Friedlander ever had and the plaintiff, his successor, has an easement of' the character claimed by her over the defendant’s land is to be determined from the assignment itself and the situation of the property at the time it was made, irrespective of the covenants in the deeds and agreement herein-before referred to. James v. Plant, 4 Ad. & E., 749.
The phraseology of the assignment from the railroad company to Solomon Friedlander, dated March 25, 1870, is peculiar.
After reciting that it is made subject to the payment of rent, etc., and inserting conditions about buildings, it grants, assigns and sets over such indenture of lease of the property therein described, with its appurtenances, and then says in substance that the same are held “ as fully and absolutely, and in the same manner, as the grantor hereof (the railroad company) could be holden of the same under the said lease herein described and conveyed.”
While the said railroad company held the property there were no easements in its favor over its lands easterly, used for its tracks, and the assignment gave to the assignee the right to hold the property only in the same manner that the said railroad company could hold it, and did hold it, under the lease assigned. Treating the assignment as a grant of the estate to the railroad company, no right of way of necessity passed to Friedlander.
The leased premises had a frontage of 193^ feet on Washington street, and was bounded 112 feet on the said railroad land. The freight house, the only building upon the property when the assignment was made, fronted on Washington street, and was accessible therefrom; there was a space between the north line of the lot and the freight house; there was access to the whole length of the freight house along the west side thereof. It must have been in the contemplation of the parties that the freight house would no longer be used for business connected with the railroad.
• Under such circumstances Friedlander could arrange his buildings as he pleased upon his own land; whatever he did, gave him no right of access thereto or therefrom over the defendant’s land.
It does not appear that the railroad company was informed that Friedlander was building under claim of any right of defendant’s adjoining land, or that it any way encouraged or invited his acts. The railroad company is not estopped from claiming that *659 plaintiff has no right- upon the lands. Snow v. Williams, 16 Hun, 468; Christianson v. Linford, 3 Rob., 215, 224; 19 Abb., 221; Corning v. Troy Iron Co., 40 N. Y., 191; affirming same case reported below, 22 How., 217; Pike v. Butler, 4 N. Y., 360; Rice v. Dewey, 54 Barb., 456; Adams v. Popham, 76 N. Y., 410, 413; Miller v. Platt, 5 Duer, 273.
The plaintiff’s complaint should be dismissed upon the merits, with costs. Ordered accordingly.
Judgment affirmed, with costs.
Learned, P. J., Landon and Mayham, JJ., concur.