ANTON TEXTOR *vs.* THE BALTIMORE AND OHIO RAIL-
ROAD COMPANY.

*Power of Municipal authorities to authorize the Erection of
Safety Railway gates at Railway Crossings.*

The city authorities have the power to establish such reasonable
appliances in the public thoroughfares where railroads pass along,
as will, by a temporary arrest of travel, protect the public from the
danger of meeting passing trains.

The streets are under the exclusive control of the city, as avenues of
travel, and whatever precaution may be reasonably taken to secure
the safety of those who use them, is but effectuating the object of
such highways, and discharging a corporate responsibility.

Assuming that the device of a post and beam for a safety railway
gate at a street crossing a railroad is an approved one, the planting
of the necessary post and the temporary interruption thereby of
travel near the crossing, during the period of danger, must be sub-
mitted to, notwithstanding, from the propinquity of a man's resi-
dence to the railroad track, it may work more interruption to him
than to others.

Where the city, by express legislative sanction, has the right to allow
the laying of railroad tracks through the streets, upon such terms
and conditions as it may prescribe, and such tracks have accord-
ingly been laid, it must follow that whatever precautions are
reasonably incident to the danger from the passing to and fro of
trains in a crowded community, may be lawfully adopted.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STONE, GRA-
SON, MILLER, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*C. Dodd McFarland,* for the appellant.

Textor *vs.* Baltimore and Ohio Railroad Company.

*James A. Buchanan,* and *John K. Cowen,* for the appellee.

RITCHIE, J., delivered the opinion of the Court.

The appellant is the owner of a lot on the south-east corner of the intersection of Henrietta street and Ohio Avenue, in Baltimore City, where he conducts a lumber business, and, the Baltimore & Ohio R. R. Company, whose tracks lie along Ohio Avenue, having obtained permission under a resolution of the Mayor and City Council to erect at said crossing safety railway gates, he applied for an injunction to prevent their erection, on the ground that, when open, they would project over the pavement in front of his office door about three feet, and when down, about five feet, and besides, close the passage way or entrance to his yards and storage rooms from Henrietta street along Ohio Avenue; thus interfering with the free transaction of his business.

He does not aver that the location of the gates is to be upon his own property; and the simple question, therefore, presented is, whether the appellee can be enjoined from subjecting him to such inconvenience and injury as, under the municipal license, it will incidentally cause him by obstructing in the manner indicated, the public highways on which his lot is situate. The answer to this question depends upon whether the city authorities have the power to establish such reasonable appliances in the public thoroughfares, where railroads pass along, as will by a temporary arrest of travel protect the public from the danger of meeting passing trains.

Of this authority we entertain no doubt. The streets are under the exclusive control of the city as avenues of travel; and whatever precaution may be reasonably taken to secure the safety of those who use them is but effectuating the object of such highways and discharging a corporate responsibility.

It is not alleged by complainant that the kind of gate to be set up is not one reasonably and skilfully adapted to its purpose; or that the closing of streets by this means is not an approved and customary practice in cities. The need of some effectual method of saving the passers-by of a populous city, from contact with trains whose approach is concealed by houses, is too obvious for discussion. And if experience has proved that the adoption of a gate, and of the pattern indicated in this case, combines a high degree of utility with no more inconvenience than results from its necessary post and pivot, we see no good reason for compelling the attendance, instead, of a watchman, as heretofore practiced, whose office is likewise to suspend the travel as the necessity occurs, merely because the appellant may suffer by reason of his particular location on the street a somewhat greater inconvenience than others, while the general public is the better enabled to enjoy the highway common to them both.

The planting of a street lamp or a fire plug must occasion some inconvenience to the citizen whose doorway happens to be close by, but this inconvenience, while peculiar to him, in a certain sense, is incidental to the exercise of the undoubted right of the city to locate these necessary appliances where most eligible; and he must endure his special annoyance for the general good, as one of the collective body of citizens whose proper use of the highway would be otherwise curtailed. And so in the case of arranging the post and beam for one of these gates. Assuming this device to be an approved one, and the contrary is not alleged, the planting of its necessary post and the temporary interruption of travel near a crossing during the period of danger, must be submitted to, notwithstanding from the propinquity of a man's residence to the railroad track, it may work more interruption to him than to others.

It may be further observed, that as the city, by express legislative sanction, has the right to allow the laying of railroad tracks through the streets, upon such terms and conditions as it may prescribe, and such tracks have accordingly been laid; it must follow that whatever precautions are reasonably incident to the danger from the passing to and fro of trains in a crowded community, may be lawfully adopted.

Of course, no municipality has the right to use its powers in a wanton, reckless or oppressive manner. This would be a perversion and abuse of its authority and privileges. But there is no averment that such is the fact in the present case. True, the appellant, in his brief, says that the gate need not be placed in front of his office, but could be placed a few feet eastward, leaving room for him to reach his premises on Ohio Avenue; but no such point is made in the bill. It would seem harsh and unjust to complainant, if he could have been spared interruption to his business, and the object of the gate be as well answered by locating it a few feet distant. But we do not feel called on, in the absence of proper allegations in his bill of complaint, to consider this statement; and we are left to the presumption that the location of the gate under official sanction was selected with discretion and just intent, and with reference to the interest of the public.

The order refusing the injunction must be affirmed.

*Order affirmed.*

(Decided 13th July, 1882.)