# ROBERT POOLE *vs.* FALLS ROAD ELECTRIC RAILWAY COMPANY, &c.

*Street Railways—New Servitude— Eminent Domain— Constitutional Law—Injunction— Use of Narrow Street by Railway and by Vehicles.*

Where the construction of a street railway is authorized by competent authority and there is no invasion of or physical interference with the property of an abutting owner, there is no *taking* of such property within the meaning of the Constitution, and no injunction will be granted to prevent consequential injuries resulting therefrom.

For injury to the property of an abutting owner other than a taking, arising from the construction of a railroad, a remedy by action at law is provided under Code, Art. 23, sec. 169.

The construction of an electric railway under legislative authority upon a street which is so narrow that there is not sufficient space for vehicles to pass or stand between the kerbstone of the pavement and the tracks, is not such a taking of the property of an abutting owner, who owns the bed of the street subject to the public easement, as entitles him to enjoin the making of the road, nor is such road so authorized a public nuisance.

By the making of such a railway the street is not destroyed or seriously impaired for the ordinary uses of the public, nor is it burdened with a new servitude. Both vehicles and the cars of the company are entitled to use the street in a reasonable way although each may at times cause some inconvenience to the other. If it is necessary for vehicles to stand in front of the abutting owner's property to deliver goods, etc., the street cars must wait, and such owner is not deprived of access to his property.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J.,
BRYAN, BRISCOE, PAGE and BOYD, JJ.

*Randolph Barton* and *Randolph Barton, Jr.* (with whom
was *Skipwith Wilmer* on the brief), for the appellant.

*William L. Marbury* and *H. R. Preston* (with whom
was *Henry J. Bowdoin* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

The appellant is the owner in fee of a tract of real
estate in the " annexed district " of Baltimore City,
abutting upon a street or way known as Union avenue.
The lines of the tract extend to the center of the street.
It is charged in the bill that the street is a private way,
but after the proof was in the appellant, with commend-
able candor, conceded that the street must be regarded
as having been dedicated to, and accepted by, the public
as a public highway.   The appellee is a corporation,
created under the general incorporation laws of the
State, and the Acts of 1896, chap. 360, for the purpose
of constructing and operating a single or double track
railway, with electricity as the motive power, upon such
streets or public highways in the city of Baltimore as
shall be approved by the mayor and city council of
Baltimore City, and in the county as shall be assented
to by the County Commissioners.   Its main stem is laid
along the Falls turnpike in Baltimore City to Mount
Washington in Baltimore County.   By ordinances of the
mayor and city council, the company is authorized to
extend its system from a point at the intersection of
Falls turnpike and Union avenue along the latter street
and other streets to Park Heights avenue; and in pur-
suance thereof is now preparing to construct its tracks,
poles and wires along the bed of Union avenue to the
end thereof and beyond.   The appellant charges in his
bill that if it is so permitted to lay its tracks there will
be no sufficient room on Union avenue on either side
of the tracks for vehicles to pass or to stand along the
kerb line of the adjoining property, and that the conse-

quences will be, that the appellee will be allowed to appropriate the street to its own use without paying any compensation whatever to the appellant, who is the owner of one-half of the street in front of his property; and furthermore that the value of his real estate bordering on the street will thereby be greatly depreciated. The prayer of the bill is that the appellee may be enjoined from placing any " track, pole or wire upon any portion of Union avenue, included in the lines " of the property of the appellant, and that he may have such other relief as his case may require. The appellee answered and evidence was taken. The proof shows, that if a double track is put upon the street the space left will not be sufficient to allow vehicles to pass or stand between the tracks and the kerb lines. There is some conflict as to the effect upon the value of property bordering along the avenue, but there is a preponderance of opinion in favor of the general desirability of the railway. The question presented by the case, however, is whether, if the road be built according to the system and plan contemplated, there will be such an invasion of the rights of the appellant, as will warrant the Court in interfering by the writ of injunction. The contention of the appellant is that even if it be conceded that the street has been dedicated and accepted, yet the laying of two tracks in a street so narrow as Union avenue will amount to a use of the street not embraced within the rights that passed by the dedication, because such a use will " necessarily deprive the street of one of its most important attributes," and that this being so the appellant is entitled to an injunction, " as owner of the reversionary interest in the street-bed, as well as of the fee in the adjoining lots," in order " to prevent the infringement of his constitutional right not to be deprived of his property without due process of law "; and also because the contemplated use will be an abuse of the street and a " public nuisance, not sanctioned by the Legislature."

The principles controlling the rights of an abutting owner have received a careful consideration by this

Court, in *O'Brien* v. *B. B. R. Co.*, 74 Md. 369, and in *Garrett* v. *Lake Roland E. R. Co.*, 79 Md. 280. In the first of these cases, a railroad company having the proper legislative authority was about to dig up one-half of the street for the purpose of making an open cut for its roadway, without having first made or tendered compensation therefor to the owners of property bordering along the street. An abutting owner, having no reversionary interest in the bed of the street, sought to obtain an injunction preventing the making of the open cut upon the ground that the proposed action of the company amounted to a "taking" of his property within the meaning of the 40th sec. of the 3rd Article of the Constitution. The open cut would not seriously hinder access to the abutting property, but it would deprive the abutting owner of the "full use of the street as it then existed"; nor would there be any invasion of or physical interference with his private property. The Court held there was no "taking" within the meaning of the Constitution; and that if there should be a deprivation of the full use of the street, or a depreciation of the value of the property of the abutting owner by the construction of the road, such injuries would be "of an incidental or consequential nature." The bill, for these reasons, was dismissed. The next case (*Garrett* v. *L. R. E. R. Co.*, *supra*) went even farther. There, a solid abutment sixteen feet in width, nine feet high and eighty-three feet long, had been erected nearly in the centre of the street, leaving not quite ten feet between its western face and the property adjoining the street. An abutting owner sought to restrain the completion of the abutment and to require the company to remove so much as had then been built. But it was held that though the abutment caused the abutting owner greater inconvenience in gaining access to his lot than he encountered before, yet this and the other injuries resulting therefrom, if any, are "purely incidental and consequential," for which the remedy of an abutting owner is in "another and a different form." In view of the principles so clearly laid down in these cases, it may be accepted as

the established law in this State that where the construction of a railroad is authorized by competent authority and there is no invasion of or physical interference with the property of an abutting owner, there is no " taking " within the meaning of the Constitution, and the remedy by injunction to prevent consequential injuries resulting therefrom cannot be invoked.

But the appellant has vigorously contended that the structure contemplated will subject the street to a new use, not included in any of the rights conferred by the dedication.    Upon this theory of the case, however, the question will be not whether there are or will be incidental or consequential damages growing out of the construction of the road, but whether there will be such a subjection or appropriation of the reversionary interest of the appellant in the bed of the street as will amount to a constitutional " taking."

By the dedication of property to the uses of a street, the public acquires an easement of passing and repassing with all such incidents as properly belong thereto, but all other rights in the soil remain in the owner.    Any use not incident to such right of passage is a new use— an additional servitude to which the street cannot be subjected without first making proper compensation to the owner of the bed of the street. *Chesapeake & Pot. Tel. Co.* v. *Mackenzie,* 74 Md. 48.  The laying of rails on a street and the running of cars thereon for the accommodation of persons desiring to use the street, is not a new use, because it is only a new mode of using the street for the purposes for which it was originally taken. *Peddicord* v. *Railway Co.,* 34 Md. 343.   The test therefore of what is a new use would seem to be found not necessarily in the nature of the structure nor in the number of the tracks but in the use itself; whether it is promotive of the objects and purposes for which the easement in the public was acquired.   The municipal authorities of the city of Baltimore have had committed to them the power to regulate the use of the streets, and that power is a trust of which they cannot divest themselves.   The primary use of the streets is not by any means that of

furnishing tracks for street railways, and therefore the
municipal authorities cannot grant to railway companies
such privileges as will obstruct the general public in the
proper use of its highways, but must exercise the power
vested in them so that the beneficial enjoyment of the
streets by the public, in the ordinary and usual modes of
passage thereon, shall not be defeated or seriously im-
paired. *Lake Roland E. R.* v. *M. & C. C., &c.,* 77 Md.
384.

In *Carli* v. *Stillwater Street R. Co.,* 28 Minn. 375, the
company constructed its track upon an alley under the
authority of an ordinance of the city.  It connected two
lines of railroad, and was maintained and operated by
horses for the transfer of freight cars from one railroad
to the other.  It did not receive or deliver freight at any
point on the alley nor did it carry passengers.  The
Court held that to be a new use, and said that it was evi-
dent from the facts that the road was " not located on
the street because its business is to be derived from the
street . . .—the public travel on the alley derives no
aid or advantage from its location there, but is and
must be more or less impeded thereby.  The construc-
tion of the track on the street cannot, therefore, be said
to be in aid of the public travel for which streets are
created any more than it would be if it was part of a
continuous line of railroad running through the city."
So in *Briggs* v. *Horse R. R. Co.,* 79 Maine 367, it was
said, " if the railroad company exclusively occupy the
land, shut off the street from it, deprive it of its char-
acter of bearing the easement of a street, use it not for
street traffic, but for what is known as railroad traffic,
the company may perhaps be said to make a new and
different use of the land."  In holding there was not a
new use under the facts of that case, the Court also said:
" The defendant is using the land as a street.  Its rail-
road is a street railroad.  Its cars are used by those
who wish to pass from place to place on the street.  A
change in the motor is not a change in the use."  In our
case of *Hodges* v. *P. P. R. Co.,* 58 Md. 619, this Court
said that the right to use the streets for a horse railway

" is not based on the ground of public convenience or public necessity but upon the ground that such use is neither inconsistent with nor does it in any manner supersede the ordinary uses for which the street was dedicated as a highway—that the easement thereby acquired was the right to use the streets of a city, not only according to the then existing modes of travel and transportation, but all such other modes as may arise in the ordinary course of improvement." The Court also said that " the iron rails, although laid on the bed of the street, do not materially interfere with or obstruct other modes of travel and transportation. On the contrary, the railway in itself offers a quick and rapid transit from one part of the city to another, thus affording greater advantages and facilities in the use of a street as a public highway."

Here the appellee having obtained full legislative authority, proposes to lay two tracks in the bed of Union avenue with poles and wires to supply the electricity. Union avenue is forty feet wide, and in places there will not be room enough for vehicles to pass or stand in the space between the tracks and the line of the street. But the street will not thereby be destroyed or seriously impaired for the ordinary uses of the public. Carriages, wagons and other vehicles can always pass unless the railway company blocks the street by permitting two of its cars, on different tracks, to remain stationary and side by side, and this it has no right to do for an unreasonable length of time. The proof shows that the weight of opinion among the property holders along the street is that the advantages of better and quicker transit outweigh any inconvenience that may result from the construction and operation of the road, and that the presence of the road with its two tracks will cause an increase in the value of the abutting property. It is difficult under these circumstances to understand how the construction of the two tracks with necessary poles and wires, and the running upon them cars propelled by electricity, can be regarded as burdening the street with a new servitude. The rights of persons pass-

ing along it on foot or with horses or in vehicles will
be the same as before. Cars cannot be permitted to
stand on the tracks in such manner as to prevent car-
riages and carts from passing. It will not be impossible
for vehicles to be kept standing at the kerb as long as
may be reasonable for the purpose of unloading or load-
ing their burdens or for discharging passengers. There
may be some inconvenience at times but not greater
than often occurs in crowded thoroughfares. As was
said in *Hodges* v. *P. P. R. Co., supra,* " it must happen in
the very nature of things that streets will be used for
legitimate purposes which may be to some extent an
annoyance to persons living upon them; but this is inci-
dent to all city property and for which there is no legal
remedy." And it must also be borne in mind that the
relief asked for in this case cannot be granted, whatever
may be the incidental or consequential damages, unless
the use proposed by the appellee is a " new use," the
imposition of which upon the street would amount to a
" taking " of the appellants' reversionary interest in the
bed of the street. We will conclude this opinion with
quoting from *Rafferty* v. *Central Traction Co.,* 147 Pa. St.
592, in which similar questions were discussed: " It is
claimed," said the Court, " that their right of free access
to their property along High street is interfered with
because vehicles cannot stand between the railway tracks
and the curbing without interfering with the cars. But
the right of the property owner in this respect is not at
all changed. He has the same right after the tracks are
laid, and the cars are running, that he had before. It
is a right which must be exercised in reason, whether
there are cars running or not. In no circumstances
does it confer the privilege of obstruction by unreason-
able exercise. But the reasonable exercise of the right
gives no right to the street-car companies to arrest it.
If at any time the owner has occasion for the presence
of vehicles in front of his property on the street, to take
away or deliver persons or goods, he may exercise that
right for such reasonable time as is necessary for his
purposes; and if in such exercise of the right the passage
of street cars is impeded, the street cars must wait."

As to the other point raised by the appellant, it is sufficient to say that this Court has more than once held that the construction of the railroad being authorized by competent authority cannot be treated as a public nuisance. *O'Brien* v. *B. B. R. Co., supra; Garrett's case* v. *L. R. E. R. Co., supra.*

If the appellant has received or shall receive injuries incident to the construction and operation of the road, the provisions of sec. 169 of Article 23 of the Code provide a remedy. The appellee corporation was created under the general provisions of the Code. By the Act of 1896, ch. 360, its name was changed and new powers given it. It is subject to the provisions of the general incorporation law of the State and liable under the 169th section for all injuries done to private persons by reason of the location of its road.

For the reasons assigned the decree must be affirmed.

*Decree affirmed.*