# LINDEN H. PETTIT

*vs.*

# THE COUNTY COMMISSIONERS OF WICOMICO COUNTY, a Corporation.

*Condemnation proceedings: collateral attack; errors, etc., review-
able on exceptions to report of examiners; lack of
jurisdiction; damage to land other than
land condemned. Jury:
issues of law.*

Where County Commissioners in condemnation proceedings·
take land for the construction of a road, etc., without observing
all the provisions required by law, they fail to acquire title to
the land and may be treated as wrongdoers for any trespass on
the lands.                                              p. 140

Suit can not be brought against County Commissioners for
damages claimed to have arisen from matters growing out of con-
demnation proceedings, where such matters could have been taken
advantage of by exceptions to the return of the Commissioners.
                                                     pp. 135-139

But the rights of the party condemning land are confined to
the lands rightfully taken, and if any damage or injury is done
to adjacent lands by blasting, by occupancy, or by using such
lands as a roadway, etc., recovery in trespass may be had there-
for.                                                    p. 141

In cases of tort, the Court must decide and instruct the jury
in respect to what elements, and within what limits, damages
may be estimated in the particular action.              p. 141

To submit to the jury an issue involving the constitutionality of a statute or any other issue of law is improper.          p. 137

Where condemnation proceedings, or other judicial proceedings, are collaterally attacked and it appears on their face that the subject-matter and the parties were within the jurisdiction of the Court, such proceedings are not impeachable for any mere errors or irregularities.          p. 138

Such errors and irregularities must be corrected by some direct proceeding either in the same Court to set them aside, or on appeal.          p. 138

If, however, there be a total want of jurisdiction either of the parties or the subject-matter, the proceedings are void and can confer no right, and will be rejected, even though the objection to them be raised in a collateral proceeding.          p. 138

*Decided March 19th, 1914.*

Appeal from the Circuit Court for Worcester County, to which the cause had been removed from Wicomico County. (JONES, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Elmer H. Walton* and *John H. Handy,* for the appellant.

*L. Claude Bailey* (with whom was *Joseph L. Bailey* and *John W. Staton* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant is the owner of a tract of land which binds upon a county road leading from Rocka Walking milldam to Catchpenny, in Wicomico County. The road is referred to

in the declaration' and mentioned in the evidence. The County Commissioners of Wicomico County determined to widen and straighten this road in front of the appellant's property.

The Act of 1904, Chapter 583, conferred upon the commissioners of that county the power to widen and straighten the road and prescribed the procedure to be followed. Section 128 of the Act provided that: "The County Commissioners of Wicomico County shall have the power by ordinance or resolution of condemning, laying out, opening, extending, and making new roads, and for altering, straightening, widening, grading, improving or closing up, in whole or in part, any existing road * * * when in their opinion the public necessity or convenience requires the same, without any previous application or petition * * *. If, however, the County Commissioners aforesaid shall proceed by condemnation in the exercise of the powers herein granted, all benefits or damages done, suffered, or incurred by laying out, opening, and making new roads, or by altering, straightening, widening, grading, improving, or closing up, in part or in whole, any existing road * * * shall be determined or assessed by three disinterested persons, freeholders and residents of Wicomico County and above the age of 21 years, who shall be appointed by the County Commissioners aforesaid and shall, within ten days, after notice of their appointment, take an oath before a justice of the peace of Wicomico County that they will faithfully and fairly, and without partiality or prejudice, view and assess the cost and damage to be suffered and incurred by any person interested in said property over, through or by which the said road * * * is to be opened, closed, extended, widened, graded or improved; and also to estimate the benefits that may accrue therefrom to any subsequent property owner, through and by which the said road, drain, waterway, or landing is to be opened, closed, extended, widened, graded or improved, or any property adjacent thereto, or any other property injured or benefited by said road; * * * but they shall give at least fifteen days' notice in one or more

newspapers published in Wicomico County of their purpose to lay out, open, extend, close up, widen, straighten, grade or improve the road * * * as directed to be laid out, etc., and of the day and hour of place of meeting for said purpose; and shall meet at the time and place mentioned in the notice given by them and proceed to exercise the powers and perform the duty assigned and required of them, and to ascertain whether any and what amount in value of the damages will be caused thereby for which the owner or occupant of any rights or interests claimed in any ground improved ought to be compensated over and above the amount in value of benefits which will thereby accrue to said owner or occupant thereof, and ascertain what amount in value or benefits will thereby accrue to any lot or parcel of ground by or through which the same may pass or improvements be made, or any other property, or to the owner or occupant thereof, which said lot or parcel of ground or owner or occupant thereof ought to pay. They shall locate boundaries and prepare an explanatory map giving description of the road opened, closed, extended, widened, straightened * * * with each separate lot or parcel of ground deemed to have sustained or received benefit, and they shall, within twenty days, return to the County Commissioners such maps, together with the amount of damage awarded such owner or occupant and the amount of benefits assessed to any lot or parcel of ground or the owner thereof, together with a certificate of their qualifications, which may be ratified or rejected, or allowed, and amended, in whole or in part, by said County Commissioners; provided, that the County Commissioners shall give ten days' notice, at least, by publication in one newspaper published in Wicomico County, or by ten days' notice, at least, in writing to each property owner so interested, of the time set for final action on the return of said examiners, and the County Commissioners shall act on said return within twenty days after the expiration of said notice and may issue a new commission as in their judgment may seem proper; and before proceeding to actually open, widen.

extend, straighten, or close any such road * * * the County
Commissioners shall pay or tender to the person, his agent,
guardian or representative, the amount of damages so
awarded; and if anyone shall feel aggrieved by the decision
of the County Commissioners in any matter affected by their
decision, he may appeal to the Circuit Court for Wicomico
County by giving written notice, within twenty days from said
decision, filed with the clerk of the County Commissioners, of
his desire to appeal. And on filing of said notice it shall be
the duty of said clerk to deliver the papers connected there-
with to the clerk of the said Court, and the same proceeding
shall be had on the appeal as in cases of appeal from judg-
ments of justices of the peace; provided, nevertheless, that
the County Commissioners may decline to open, lay out, ex-
tend, grade, widen, or straighten any road * * * notwithstand-
ing the decision of the said Court, but in case of refusal to
do so they shall be liable for all cost incurred and shall pay
the same; all benefits assessed by virtue of the above pro-
visions shall be prior liens on the respective lots or parcels of
ground which are assessed from the time of the final ratifica-
tion of the aforesaid return, and shall be collected as taxes
are now collected or may be collected by action."

On December 2nd, 1909, the County Commissioners ap-
pointed James M. Jones, A. W. Gordy and H. M. Clarke,
commissioners or examiners to lay out, extend, widen, etc.,
said road, and to assess benefits and damages as provided for
in the act, and to locate boundaries, prepare an explanatory
map, showing each separate lot or pacel of land deemed to
have sustained injuries or received benefits, together with the
amount of damages and benefits awarded, with directions to
report their proceedings to the County Commissioners, with
a certificate of their qualifications, within twenty days from
the date of their meeting upon the premises. The commission
was issued January 5th, 1910. Messrs. Jones and Gordy
qualified before a justice of the peace for Wicomico County,
but H. M. Clarke qualified before the clerk of the Court.

The examiners met on the premises on March 7th, 1910, having first given the notice required by the act. They made their return, to which was attached as a part thereof, the commission, certificate of publication and plat; they estimated the cost of construction to be $650.00; they assessed the damages to the various property owners at $180.00 and the benefits at $64.00. The appellant was awarded one dollar as damages and assessed one dollar for benefits. Upon the return of the examiners, the County Commissioners published in the *Wicomico News* for two weeks prior to October 25th, 1910, the following notice: "The County Commissioners of Wicomico County hereby give notice that the report of James M. Jones, A. W. Gordy and H. M. Clarke, commissioners to widen and straighten the Rocka Walking to Catchpenny road, in Quantico District, has been filed in this office and will be taken up for final ratification on Tuesday, October 25th, 1910. Objection to the ratification must be made by noon on the above date. If the commissioners' meeting is postponed from this date the report will be taken up at the next regular meeting of the board. By order of the board. Thomas Perry, clerk."

The record does not show when the report of the examiners was filed. Mr. Clarke, one of the examiners, was the road engineer of Wicomico County, and was appointed and paid by the County Commissioners. The return of the examiners was admitted in evidence over the objection of the appellant, and the action of the Court in overruling the objection and admitting the return in evidence constitutes the first bill of exceptions. The appellant bases his objection to the admissibility of the examiners' return upon five grounds: First, that no ordinance or resolution was passed by the commissioners as required by the act; secondly, that Clarke was disqualified as an examiner, for the reason that he was an appointee of the County Commissioners, and, therefore, was not a disinterested freeholder; thirdly, that the examiners did not take the oath within ten days after their appointment, as required by

law; fourthly, that one of them took the oath before the clerk, and not before a justice of the peace, as the law directed; and, fifthly, that the return was not made within the time prescribed by the act.

Acting under the proceedings, the County Commissioners proceeded to widen and straighten the road. The work of construction upon the plaintiff's land was begun by Mr. Orlando Taylor, one of the County Commissioners, and whose son was in charge of the men doing the work. They appropriated a strip of the plaintiff's land about four feet wide and binding on the county road from a thousand to twelve hundred feet, and, against the protest of the plaintiff, dug up and destroyed a number of shade trees, and, without any necessity for so doing, they hauled parts of the trees and branches over the plaintiff's property, and deposited them upon his strawberry patch, located quite a distance beyond the boundaries of the new road. The plaintiff instituted an action of trespass in the Circuit Court for Wicomico County to recover damages for these injuries. Upon his suggestion and affidavit the case was removed to the Circuit Court for Worcester County for trial. At the conclusion of the evidence of both parties a verdict and judgment were entered for the defendant under the direction of the Court upon the ground that no legally sufficient evidence had been offered under the pleadings to entitle the plaintiff to recover.

There are some questions of pleading presented which will be first stated. The declaration contained four counts, to each of which the defendant demurred. The Court overruled the demurrer to the first count and sustained those to the second, third and fourth counts. We can discover no error in the first, third and fourth counts. The first count alleged that the defendant broke and entered certain land of the plaintiff lying and being and situate on the public county road from Rocka Walking to Catchpenny, Quantico District, in the said Wicomico County, owned in fee simple and occupied by the plaintiff, and dug up and cut down the trees

thereupon growing and took possession of a large quantity of said land and wrongfully dispossessed the plaintiff of the same on or about the month of March, or a little later, in the year 1910. The third count charged that the defendant "wrongfully seized and took possession of a large quantity of the plaintiff's land situated in Quantico Election District, in Wicomico County, Maryland, owned and occupied by him as a residence lying on the county road from Rocka Walking to Catchpenny, in said Wicomico County. The said defendant under some claim that such taking was under some pretended right that was necessary for the public use, seized and took possession of the same and says that the defendant did not pay him or any one for him, anything for the same, contrary to the Constitution of the State of Maryland, and the defendant never paid for the same or tendered him any payment therefor or any one for him, to the great wrong and injury of the plaintiff, etc."

The fourth count alleged that the defendant "wrongfully entered the land of the plaintiff and dug up and cut down and carried away a large quantity of shade trees, ornamental trees, timber trees, and other valuable trees, strawberry plants, and other valuable plants and shubbery, and converted the same to the defendant's own use, etc."

The second count was bad. It alleged that the defendant was acting under its power as County Commissioners of Wicomico County to open, alter, close, and straighten public county roads and then proceeded to set out certain acts which could only be taken advantage of by exceptions to the return of the commissioners or by a direct appeal to the Court from the action of the commissioners ratifying the return. The count conceded the jurisdiction of the commissioners and upon that concession any inquiry into practically all the facts alleged is precluded under the authority of the cases presently referred to.

The defendant filed two pleas to the first count: First, that the alleged wrong was done in the execution of legal pro-

ceedings to widen and straighten the said public county road from Rocka Walking mills to Catchpenny; and, secondly, the general issue plea. The plaintiff joined issue upon the second plea and demurred to the first. The Court sustained the demurrer, whereupon the defendant filed the following amended plea: "That on October 25th, 1910, the County Commissioners of Wicomico County, after notice, *duly ratified finally* the report of James M. Jones, Allison W. Gordy and Horace M. Clarke, three disinterested freeholders of said Wicomico County, duly appointed by the County Commissioners of Wicomico County, under provisions of Chapter 583 of the Acts of the General Assembly of 1904, to determine and assess all benefits and damages to be suffered and incurred by any person by widening and straightening the public county road from Rocka Walking mills to Catchpenny, and no appeal having been taken by anyone interested therein from the said decision of the said County Commissioners after payment or tender to the respective persons entitled thereto of any and all damages awarded them,—the alleged wrong was done in widening and straightening said public county road from Rocka Walking mills to Catchpenny in accordance with the report and explanatory map and location of boundaries by the commission aforesaid."

It also refiled the general issue plea. The defendant joined issue on the general issue plea and demurred to the amended plea. The Court overruled the demurrer, and the plaintiff then filed five replications to the plea. Issue was joined upon the first replication, which was a direct traverse of the facts alleged in the plea, and rejoinder was filed to the third, fourth and fifth replications, and issue was joined thereon. A demurrer was filed and sustained to the second replication. The result of the pleadings was to raise the following issues in the case: First, an issue of fact under the first count; secondly, an issue of fact under the amended plea; thirdly, an issue upon the disqualification of the examiners; fourthly, an issue of tender or payment of damages to the plaintiff for the

property taken; and, fifthly, an issue of law as to the constitutionality of section 128 of the Act of 1904.

Assuming that the County Commissioners had jurisdiction in the premises, it would seem clear that the third issue was improper, and should not have been submitted to the jury; it was likewise improper to have presented an issue of law namely, the constitutionality of section 128 of the Act of 1904. The case proceeded to trial, and the plaintiff offered evidence tending to prove the injuries alleged in the declaration, and also the extent of those injuries. The defendant then called Horace M. Clarke, one of the examiners, and the road engineer of Wicomico County, and proved by him the quantity of land taken, and put in evidence the report of the examiners, above referred to, and closed its case. The plaintiff submitted six prayers, all of which were refused. The first prayer is based upon the proposition that the plaintiff was entitled to recover for injuries done to his property, including injury to his strawberry patch and other crops, not embraced in the condemnation proceedings and not necessary to the execution of said proceedings. The second told the jury that if they found that there was no payment or tender of payment to the plaintiff for the land condemned then their verdict should be for the plaintiff, "and in estimating the damages they may take into consideration all the damage of every nature which may have directly resulted from the widening and staightening of said road." The third prayer was similar to the first, but concluded as to the damages which the plaintiff might recover. The fourth presented the question as to the disqualification of one of the examiners, and the fifth asserted that the condemnation was null and void if the commissioners did not "follow strictly the statutory provisions." The sixth prayer was as follows: "The plaintiff prays the Court to instruct the jury that if they shall find for the plaintiff under the fourth and fifth prayers of the plaintiff, then in estimating the damage they shall take into consideration all the damage and injury which the plaintiff sus-

tained by reason of the taking of said land by the defendant, and the injury to the trees and the loss and damage sustained by the cutting down and removal of said trees and the loss and damage sustained by the plaintiff by reason of the injury to the strawberry beds and other growing crops of the plaintiff." If the case was entitled to go to the jury, we think the Court should have granted the second and third prayers in connection with each other. If the County Commissioners had jurisdiction in the premises, the fourth and fifth prayers were properly refused, for the reason that the facts submitted by those prayers were not open to inquiry in this case, but should have been availed of by a direct appeal from the action of the commissioners. The second and sixth prayers were defective in not laying down a definite rule to guide the jury in estimating the damages. It is a perfectly well settled principle of law that where the proceedings of a Court are collaterally attacked, and it appears on their face that the subject matter and the parties were within the jurisdiction of the Court they are not impeachable for mere errors or irregularities that may be apparent. Such errors and irregularities must be corrected by some direct proceeding either in the same Court to set them aside or on appeal. If, however, there be a total want of jurisdiction either of the parties or the subject matter, the proceedings are void and can confer no right, and will be rejected, though the objection to them be taken in a collateral proceeding. This principle applies likewise to condemnation proceedings. In *Huling et al.* v. *Kaw Valley Rwy. & Improvement Co.,* 130 U. S. 559, JUSTICE MILLER, discussing a collateral attack upon condemnation proceedings upon the ground that one of the commissioners appointed to locate a railroad and assess damages for land taken was disqualified, said: "The plaintiffs cannot recover in the present action without holding in this collateral proceeding that all that was done by these commissioners is void by reason of this want of qualification in one of their number. The proper time for these plaintiffs to have taken this objec-

tion to Mr. Wood as a commissioner was either at the time
of his appointment or at the time he proceeded to act as com-
missioner. If it be objected that they could not be supposed
to have any notice of the application for the appointment of
these commissioners and of the time and place when the judge
would act on that application, the law presumes that they had
notice, and might have attended at the time the commis-
sioners entered upon their duties. If this objection had been
then taken, it might have been sustained, or it could have
been taken advantage of by way of appeal from the proceed-
ings of the commissioners; but to permit such an objection as
this to prevail at this time, and thus defeat the whole of the
proceedings upon this narrow ground, is a proposition unsup-
ported by sound principle or by authority. It is a collateral
attack upon a proceeding which has been completed according
to the forms of law. There is no more reason why this want
of qualification should, when shown at this stage of the pro-
ceeding, invalidate it all, than there is why the discovery,
after a judgment, and after that judgment has passed beyond
the control of the Court, that one of the jurors was disquali-
fied, should make absolutely void the verdict and the judg-
ment. It is only one of those cases frequently occurring in
the administration of the law, in which it is better that errors
not pointed out at the proper time should be disregarded, than
that, by attempts to correct them, evils much worse should
follow than those incident to the error."

In *Jenkins* v. *Riggs,* 100 Md. 427, in which the proceed-
ings of the County Commissioners of Baltimore County in
the opening of certain roads were attacked in a Court of
Equity the Court said: "If the County Commissioners acted
within their jurisdiction in reference to these roads the other
matters alleged in the bill were subject to their determination,
and mere errors made by them or irregularities in their pro-
ceedings were reviewable only upon appeal taken, as pro-
vided for in the statute, to the Circuit Court for Baltimore
County, and do not form a proper foundation for a bill in

equity. *Greenland v. County Commissioners,* 68 Md. 62; *Gaither v. Watkins,* 66 Md. 581; *Allegany Co. v. Union Mining Company,* 61 Md. 548."

The Act of 1904, Chapter 583, under which the proceedings in this case were taken, provided for the return of the examiner to the commissioners and for an opportunity for all persons interested to object thereto, and it gave all such persons who felt aggrieved by the decision of the County Commissioners a right to appeal therefrom to the Circuit Court. There must be a ratification by the commissioners of the action of the examiners, or a judgment by a Court of law upon appeal and payment and tender of the damages sustained by the land owner before his rights are concluded, or title vested in the condemning corporation. The amended plea, which set up the condemnation proceedings as a part of the suit, alleged that the report of the commissioners had been "duly ratified finally" by the County Commissioners. But the record shows no ratification of the report. It merely discloses the appointment of the examiners and their proceedings, upon which no action appears to have been taken by the commissioners, except the publication of the notice, above transcribed, that the report of the examiners would be taken up for final ratification on October 25th, 1910. There is nothing in the report to show that the defendant acquired any title or interest in the land taken, and, therefore, in the construction of a road upon the land of the plaintiff the defendant must be treated as a wrongdoer. But had the report of the examiners been finally ratified, as alleged in the plea, the plaintiff under the evidence would have been entitled to recover for injuries done to his property outside the boundaries of the land actually taken. "The authorities undoubtedly hold that the assessment of damages will be presumed to include all damages which arise from constructing the works in a reasonable and proper manner, having regard to the efficiency of the works on the one hand and the interest of the land owner on the other. Where a subsequent claim for damages is made,

arising from the construction of works, the question will be whether the works have been constructed in a proper manner, and whether the damage necessarily results from the works as so constructed. If these questions are answered in the affirmative, then the damages complained of will be presumed to have been considered in estimating the damages, and no further recovery can be had. If they are answered in the negative, then a recovery can be had in an appropriate common law action * * *. The rights of the party condemning are confined to the land taken, and if any damages are done to adjoining lands by blasting, by occupation, or encroachments, or by using it as a roadway, a recovery may be had." *Lewis on Eminent Domain,* secs. 567 and 573. Such damages are not included in the award of compensation.

The defendant has appropriated permanently a portion of the plaintiff's property upon which was growing certain trees described in the evidence, and in addition thereto, the plaintiff offered evidence tending to show other injuries not of a permanent character. In cases of tort "the Court must decide and instruct the jury in respect to what elements and within what limits damages may be estimated in the particular action." *B. & O. R. R. Co.* v. *Carr,* 71 Md. 143; *Western Maryland R. R. Co.* v. *Martin,* 110 Md. 554. The rule of damages to be applied in cases of this kind is stated in *Redemptorists* v. *Wenig,* 79 Md. 348. It follows that the judgment must be reversed and a new trial awarded.

> *Judgment reversed and new trial awarded,*
> *the appellee to pay the costs.*