## JOHN L. KREBS ET AL. *v.* STATE ROADS COMMISSION ET AL.

[No. 16, January Term, 1931.]

*Decided April 8th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Alexander Armstrong* and *Arthur W. Machen, Jr.,* with whom were *Armstrong, Machen & Allen,* on the brief, for the appellants.

*Robert H. Archer, Assistant Attorney General,* with whom were *Wm. Preston Lane, Attorney General,* and *J. F. H. Gorsuch, Jr.,* on the brief, for the State Roads Commission, appellee.

*Rowland K. Adams,* with whom were *O. Bowie Duckett, Jr., Jenifer & Jenifer,* and *Adams & Hargest,* on the brief, for the Northern Central Railway Company and the Pennsylvania Railroad Company, appellees.

BOND, C. J., delivered the opinion of the Court.

The complainants are owners of property, and storekeepers, on the public road west of the grade crossing of the Northern Central Railroad at Parkton, in Baltimore County, and they have applied for an injunction to restrain the abandonment of the crossing and consequent cutting off of the road to the east of them at that point, without payment of compensation for their loss and injury from the obstruction to passage. A demurrer to their bill of complaint was sustained, and the bill was dismissed. And they appeal from that action.

It is averred in the bill that the village of Parkton is mainly on the east side of the railroad, along the highroad from Baltimore to York, Pa., which crosses the railroad there. The crossing has been immediately south of the station, and adjacent to the railroad property; and the appel-

lants' store is a short distance west of the crossing, abutting on the highway. Eighty per cent. of the trade of the store has come from the village across the tracks, and much of the trade from the west side has come from people going to and from the village. Part of the building used as a store has been rented for a barber shop, to accommodate customers who likewise live mostly east of the tracks. The Act of 1927, chapter 327 (Code, article 91, section 38A), provided for the removal by the State Roads Commission of dangerous grade crossings, including, when necessary for the purpose, "vacating, relocating or changing the lines, width and direction" of the highway. And under these provisions the commission has proceeded to substitute an overhead crossing near Parkton on higher ground to the south, and to divert the road accordingly, to cross at the higher site. The main road is caused to turn from its former bed at a point to the southwest of the complainants' property, and to rejoin the older bed only at a point beyond, or east, of the railroad, and beyond much of the village, so that the store, instead of being by road a few hundred feet from the village, is now from one-half to three-quarters of a mile distant. The bill avers that thus the removal of the old grade crossing, and the interruption of the old highway at that point, will deprive the complainants of convenient access and leave their property in a cul-de-sac, causing a loss of its usefulness, value and business advantages. This deprivation and loss, it is contended, will amount to a taking of property in a constitutional sense, and, therefore, compensation must first be paid them under article 3, section 40A, of the Maryland Constitution. It is also contended that the deprivation consequent upon the project will violate the prohibitions of the Fourteenth Amendment of the Constitution of the United States, and of articles 19 and 23 of the Declaration of Rights of Maryland, against deprivation of property without due process of law, or the law of the land. Further, it is contended that, even if there should be no violation of the Constitutions of the United States and the State in the removal of the crossing without compensation to nearby abutters, the complainants as such abutters

are secured a right to compensation for their loss in an express provision of section 38B of the Act of 1927, chapter 327, or article 91 of the Code, that "one-half of the expense of such alterations, changes, relocation and/or opening, including damages to adjacent property, shall be paid by such railroad and one-half by the State Roads Commission."

Taking the last contention first, the court is of opinion that this provision of the statute for division of expenses, "including damages to the adjacent property," cannot be construed to provide for payment of consequential damages caused to owners of such lots abutting on the old section of road. The words, taken by themselves, are broad and vague in meaning, and seem to refer rather to an element of cost assumed to be understood without explanation here because otherwise provided for and defined. No item of merely consequential damages has been allowed for elsewhere in the law, as an incident to a public improvement, and it has never been the practice in this state, up to this time, to provide for payment of consequential damages caused to an owner of abutting property. And a mere passing reference, such as that in the clause quoted, would not ordinarily be used to originate and announce a new policy, and secure a new private right. We infer that the reference is to damages to adjacent property customarily recoverable, under the law as it has stood in the past, upon the "alteration, change, relocation and/or opening" of a road. *Pettit v. Wicomico County,* 123 Md. 128, 141, 90 A. 993; *Baltimore v. Garrett,* 120 Md. 608, 611, 87 A. 1057; *Realty Improvement Co. v. Consol. Gas Co.,* 156 Md. 581, 589, 144 A. 710. Unless there is a constitutional right to compensation, we conclude, there is no ground for an injunction at the suit of an injured owner of property abutting on the road near the old crossing. We are not to be understood as expressing an opinion on any question whether a statutory provision for payment of consequential damages, if not expressly made a condition to the prosecution of the public improvement, would justify a resort to a court of equity for an injunction.

Narrowing the controversy still further, the court does not see in the prohibitions of the United States Constitution and that of the State, against deprivation of property without due process of law, any ground for relief not included in the requirement of article 3, section 40A, of the State Constitution, that private property shall not be taken for public use without just compensation to the property owner. And we do not understand the complainants, in argument, to contend for any additional ground of relief in those prohibitions. In many decisions it has been held that, given an authorization by statute, the only limitation upon the power of the public body to proceed is that found in this prohibition against legislation for taking private property without compensation. The prohibitions against deprivation of property without due process of law have, indeed, been regarded as having the same effect in such case. *Leonard v. Earle,* 155 Md. 252, 261, 141 A. 714; *Moale v. Baltimore,* 5 Md. 314, 321; *Cumberland v. Willison,* 50 Md. 138; *Northern Transportation Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 336; *Gibson v. United States,* 166 U. S. 269, 275, 17 S. Ct. 578, 41 L. Ed. 996; *Scranton v. Wheeler,* 179 U. S. 141, 164, 21 S. Ct. 48, 45 L. Ed. 126; *Sanguinetti v. United States,* 264 U. S. 146, 148, 44 S. Ct. 264, 68 L. Ed. 608.

It is necessary to observe that the prohibition in the Maryland Constitution is confined, as is that in the Constitution of the United States, to a taking of private property for public use without compensation. In about half of the states of the country, hardships to abutting owners, incidental to public improvements, have led to the addition of constitutional prohibitions against damaging, as well as against taking, private property without compensation. And in some of the states it is customary to have provisions for such incidental damages added to all legislative authorizations for public improvements. These facts make caution necessary in referring to the conclusions or reasoning of courts of other states upon similar questions. In this case the court has to consider the applicability of a requirement of compensation for a taking of private property for public use.

There is no dispute of the authority of the State Roads Commission, under the statute law, to make the change here considered. Therefore the case is not one for special or peculiar damages from nuisance caused by the public body, or from a damaging condition caused by mere neglect of duties imposed upon the body with respect to the maintenance of highways. *Garitee v. Baltimore,* 53 Md. 422; *Bembe v. County Commissioners,* 94 Md. 321, 51 A. 179; *County Commissioners v. Watts,* 112 Md. 353, 357, 76 A. 82; *Johnson v. Oakland,* 148 Md. 432, 129 A. 648; *Libertini v. Schroeder,* 149 Md. 484, 132 A. 64. And it is not one of a claim for damages from obstructing an existing street or road by a use that is not a highway use. *Textor v. Railroad Co.,* 59 Md. 63; *Garrett v. James,* 65 Md. 260, 3 A. 597. A taking of property, of course, involves a special and peculiar injury or loss to the property owner; but it involves something more. *Garrett v. Lake Roland R. R. Co.,* 79 Md. 277, 282, 29 A. 830. And the distinction discussed in argument, between injury peculiar to an abutting owner and injury which he shares with the other members of the public, is not decisive in this controversy. It is one of more relevancy in a controversy on the allowance of incidental damages, or damages from a nuisance or improper obstruction in an existing highway.

The bill avers a severe injury to the complainants and their business from the relocation of the public easement, with the abandonment of the site where it has been relied upon for a short, convenient, passage between the properties developed along the highway on each side. It is not that the properties are cut off from access to the traveled way in front of them, as in the cases of *Walters v. Baltimore,* 120 Md. 644, 88 A. 47, and *Sanderson v. Baltimore,* 135 Md. 509, 523, 109 A. 425. In those cases it was decided that, when a structure in a street, or a cutting down of grade, has left abutting property practically deprived of access to and from the street in front, then, even though there has been no physical invasion of the property, there has been a taking of it in the constitutional sense. Such a cutting off of access may, perhaps, be

regarded as analogous to the cases in which land abutting upon a public improvement has been flooded, and cases of those few other incidental occupations of abutting property which have been held to amount to "taking" under the original provision in the Constitution of the United States. *Pumpelly v. Green Bay Co.,* 13 Wall, 166, 20 L. Ed. 557; *Northern Transportation Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 336; *Gibson v. United States,* 166 U. S. 269, 275, 17 S. Ct. 578, 41 L. Ed. 996; *Sanguinetti v. United States,* 264 U. S. 146, 148, 44 S. Ct. 264, 68 L. Ed. 608.

It is complained that a deprivation of access in some degree will follow here upon interruption of the short communication with the territory east of the tracks, and that, considering the location of the particular property, and the degree of inconvenience to it, and to the conduct of business in it, this interference with access should be classed with the interference involved in cases of cutting off access to streets in front, as a taking of the nearby property in a constitutional sense. Stress is laid on a supposed analogy to cases in which a cutting off of passages from property in a city block to an intersecting street on one side, leaving the property in a cul-de-sac, has been held to amount to a taking. This has been so held in some jurisdictions only, and the question dealt with has been, termed one of the vexed questions of the law. *Lewis, Eminent Domain* (3rd Ed.), sec. 202. This court has never had occasion to decide it. See *German Lutheran Church v. Baltimore,* 123 Md. 142, 152, 90 A. 983. And it seems difficult to draw any distinction in principle between the resulting disadvantage to property so situated and that to properties which suffer from the cutting off of access on one of two fronts, or from the reduction of wide adjacent streets to narrow passages, none of which latter disadvantages have been found to constitute takings of the properties for public use in the constitutional sense. *Baltimore v. Dobler,* 140 Md. 634, 118 A. 168; *Baltimore v. Marine Works,* 152 Md. 367, 136 A. 829; *Balto. & O. R. Co. v. Kahl,* 124 Md. 299, 92 A. 770; *O'Brien v. Baltimore Belt R. Co.,* 74 Md. 363, 22 A. 141; *Poole v. Falls Road Ry. Co.,* 88 Md. 533, 41 A. 1069. But

the present complaint seems to be not exactly that advanced in the cases of culs-de-sac. Or, at least, it seems to be indistinguishable on principle from complaints of cutting off of more convenient travel, which this court has decided did not amount to constitutional takings.

In the case of *German Lutheran Church v. Baltimore, supra,* a suit at law for damages, the church property was blocked from passage to the east, across the tracks of the Baltimore & Ohio Railroad, but had the street immediately in front left clear, an intersecting street on its eastern side, between the church property and the obstruction, left clear, and all streets to the west left clear. In that situation, the conclusions expressed by some courts on constitutional objections made in cases of culs-de-sac were held inapplicable, whether valid or not, which this court did not decide. Some of the authorities referred to drew the distinction between blocking all passage from the street in front, in one direction, and blocking it beyond an intersecting street, and held only the former to amount to a taking.

But the present complaint is not that the property owners are at a disadvantage because of the lack of an intersecting artery between their property and the tracks. The complaint is only against having to use the new crossing and section of highway, however they may be reached; it is one of distance and change of relation to territory immediately across the tracks, as it was in the case of the *German Lutheran Church.* The store is to be separated from its customers, and removed from competition with stores on the village side. And this consequence of moving the crossing would not be materially ameliorated by the owners' having access south to the new crossing from both sides of their property, instead of from one side only. The case would seem analogous to that of *Ragan v. Susquehanna Power Co.,* 157 Md. 521, 527, 146 A. 758, although the degrees of inconvenience and loss involved in the two cases differ. In that case the owner of a farm on a road running in a northerly and southerly direction, away from or toward the Susquehanna River, complained that by the closing and flooding of the only connecting road south of

him, along the river, he had been deprived of his customary convenient passage by that way to towns and villages to the east, and could reach them now only by a longer intersecting highway beyond his other side, to the north. It was held that the relegation to the one,' longer, way, and the comparative inconvenience and consequent loss of value in the property, did not render the closing of the road to the south a taking of his property.

It is argued that the complainants have, by reason of their situation, an easement in the crossing which is so near to them, at the old site, and that, as an easement is property, and the removal deprives them of that, it must be regarded as in law a taking of their property. In *Van Witsen v. Gutman,* 79 Md. 405, 411, 29 A. 608, the court, in denying the power of public authorities to close one end of an alley for the private use of an abutter at the point of closing, said that the other abutters on the alley, in being barred from passage that way, "lose their easement in the closed portion, and she is thereby enabled to erect a building upon it. This is palpably and plainly taking their private property for her private use. In other words, it is a forced sale to her of their property." The private purpose was the real ground of invalidity found, and the decision was rendered by judges who, on the day before, had said in *Garrett v. Lake Roland Co.,* 79 Md. 277, 280, 29 A. 830, that only actual appropriation or entry would constitute a taking for a public purpose. Taking these and all other relevant decisions of the court together, it seems to be by no means settled that nearby abutters, such as the complainants, have additional private rights or easements in a public easement, which are taken in a duly authorized surrender of the public easement for a public use. *Cumberland v. Willison,* 50 Md. 138; *O'Brien v. Balto. Belt R. Co.,* 74 Md. 363, 22 A. 141; *Poole v. Falls Road Co.,* 88 Md. 533, 41 A. 1069; *Townsend, Grace & Co. v. Epstein,* 93 Md. 537, 49 A. 629; *De Lauder v. County Commissioners,* 94 Md. 1, 50 A. 127; *Webb v. Balto. & O. R. Co.,* 114 Md. 216, 79 A. 193; *Walters v. Balto. & O. R. Co.,* 120 Md. 644, 88 A. 47; *German Lutheran Church v. Baltimore,* 123 Md. 142, 90 A.

983; *Balto. & O. R. Co. v. Kane,* 124 Md. 231, 92 A. 532; *Balto. & O. R. Co. v. Kahl,* 124 Md. 299, 92 A. 770; *Baltimore v. Bregenzer,* 125 Md. 78, 93 A. 425; *Sanderson v. Baltimore,* 135 Md. 509, 109 A. 425; *Baltimore v. Dobler,* 140 Md. 634, 118 A. 168; *Baltimore v. Marine Works,* 152 Md. 367, 136 A. 829; *Huffman v. State Roads Commission,* 152 Md. 566, 137 A. 358; *Ragan v. Susquehanna Power Co., supra.* Such a separate easement and such a taking, if they exist and require condemnation or compensation paid in this instance, must also have existed in several of the cases cited, particularly, it would seem, in the cases of the *German Lutheran Church* and *Ragan,* already discussed, and in others in which adjacent street beds were taken over for public use, or in which the use by complainants was obstructed in greater or less degree, but compensation was found not to be required by the Constitution. Expressions used in the course of argument in some of the opinions may, perhaps, be difficult to reconcile with each other; but, if we take the decisions and essential reasons, which alone should control, we find the argument for a separate private easement here inconsistent.

And, apart from the question of consistency with past decisions, it seems to this court that the argument is not consistent with the best reasoning. Owners of property along the highway near the crossing probably all suffer from the surrender of the public easement at that site. And it seems to be a loss which many who have customarily traveled that way must suffer in some degree. The surrender is made by officials empowered to act on behalf of all the public, including those who, like the complainants, depend more or less upon the use of the crossing in their daily occupations. It could not be said that the property of any of these users—at least property not actually deprived of all access—is to be taken, unless it can be said that the location of the public easement at that site gave them superimposed property rights against the public as a whole. And this, we think, it did not do. Correct though it may be to say that the surrender or vacation of the public easement there will diminish values

in the neighboring abutting properties, or damage businesses carried on in them, this, it seems, cannot mean that the owners will lose any right other than, or in addition to, the right to travel across the tracks, which has been included and secured to them in the public easement. Their right has been only that secured to the public as a whole, even though by reason of the location of their properties it is of greater usefulness to them than to others of the public. The question under the Constitution is not one of comparative usefulness, or loss, to one property or the other from the shifting of the crossing, but one of taking private properties in doing it. And in the opinion of this court the mere surrender of the easement of crossing at the former site, whatever may be the inconvenience or loss resulting to owners of the nearby properties, cannot be regarded as involving a taking of those properties. *Balto. & O. R. Co. v. Gilmor,* 125 Md. 610, 618, 94 A. 200. The inconvenience and loss, we think, cannot be considered as other than injuries incidental to the removal, or consequential upon it; and, to include them within a taking, the court would have to make an extension of the constitutional prohibition, amounting to an amendment, such as has been adopted in many other states, but which the people of this state have not yet seen fit to make. . *Cumberland v. Willison,* 50 Md. 138; *German Lutheran Church v. Baltimore,* 123 Md. 142, 90 A. 983; *Dobler v. Baltimore,* 151 Md. 154, 134 A. 201; *Huffman v. State Roads Commission,* 152 Md. 566, 586, 137 A. 358; *Ragan v. Susquehanna Power Co.,* 157 Md. 521, 146 A. 758; *Tomazewski v. Palmer Bee Co.,* 223 Mich. 565, 194 N. W. 571; *Saeger v. Commonwealth,* 258 Pa. 239, 101 A. 999; *Kachele v. Bridgeport Co.,* 109 Conn. 151, 145 A. 756. And see 1 *Nichols, Eminent Domain,* 500.

It has been remarked in an earlier opinion of the court that, when a street or road is closed, compensation must be paid to those entitled to it. *Baltimore v. Brengle,* 116 Md. 342, 351, 81 A. 677. Compare *Mason v. Shrewsbury etc. Ry. Co.,* L. R. 6 Q. B. 578, 587; *Burrows v. Lang* (1901), 2 Ch. 502; *Flagg v. Concord,* 222 Mass. 569, 573, 111 N. E.

.369; *Kray v. Muggli,* 77 Minn. 231, 79 N. W. 964, 1026. But, assuming full authorization by statute for the closing without allowance of compensation, the claim could rest on no basis other than that of the constitutional prohibition against a taking without compensation; and such a taking, we find, is not involved in the surrender or transfer of the public easement in this case.

*Decree affirmed, with costs to the appellees.*